# CHARLESTON.

KANAWHA VALLEY BANK *v.* WILSON *et al.*

and

KANAWHA VALLEY BANK *v.* CHILTON *et al.*

and

KANAWHA VALLEY BANK *v.* MEADOWS, MILES & HALL.

Submitted January 20, 1887.—Decided April 11, 1887.

1. JUDICIAL-SALE—EQUITY OF REDEMPTION—DOWER—MERGER.

"W. E. C." and "W. T. C." each held large debts against "J. B. C.," secured by deed of trust upon his land; afterwards "G." recovered judgment against "J. B. C." for $1,800. "W. T. C." assigned his debt to "W. E. C.," and "J. B. C." was adjudged a bankrupt; the assignees of "J. B. C." sold the equity of redemption in said land to "W. E. C." for $10.00, who soon afterwards assigned all of said trust debts to "W." "G." then brought suit to sell said land to pay his judgment, wherein the trust-debts, then amounting to $9,549.42, were decreed as the first lien thereon, were decreed to "W.," who at the sale of the land under said decree, became the purchaser thereof at the price of $5,000.00, and "W. E. C." having died, his widow filed her petition in a creditors' suit, in which said land was decreed to be sold to pay the debts of "W." claiming dower therein. HELD:

I. "W. E. C." was never seized at law or in equity of any estate in said land; and his widow was not entitled to dower therein.

II. Although "W. E. C" may have been the owner of all said trust-debts at the time he became the owner of the equity of redemption in said land, the doctrine of merger of estates in land in such case have no application. (p. 652.)

2. Judgment-Sale—Parties—Dismissal—Chancery Practice.

Where a tract of land owned by the heirs of a decedent was sold by the sheriff for the non-payment of taxes assessed thereon against them as such heirs, and at such sale the same was purchased, in his own name, by one of said heirs, to whom the same was afterwards regularly conveyed by the recorder of the proper county, such purchase and conveyance vested in such purchaser the legal title to said land as the same was vested in said heirs at the commencement of the years, in which the taxes were assessed, for the non-payment whereof the same was sold. Many years after such purchaser had obtained such deed, and after a creditor's bill to subject the said land to the payment of his debts had been pending for eleven years, certain *pendente lite* purchasers of the interest of one of the heirs of said decedent, none of whom were parties to that suit, filed their petition therein, claiming the interest of such heir in said land and praying to be made defendants thereto, and that their rights therein might be protected from the claim of such creditors, which petition the court dimissed. Held:

I. It was the duty of the court to require the plaintiff to amend his bill by making defendants all the heirs of such decedent or those claiming under them; and to proceed to ascertain the true state and condition of the title of said purchaser thereto, before directing a sale of any portion thereof for the benefit of his creditors.

II. The court erred in dismissing their said petition. (p. 655.)

When the case of the *Kanawha Valley Bank against A. H. Wilson and others*, decided at the special term of this Court in December, 1884, was remanded to the Circuit Court of Kanawha county, that Court on the 7th of April, 1885, re-committed the cause to commissioner Gallagher to make and state an account showing—

1st. "The amount of the indebtedness of the defendant, A. H. Wilson, to the complainant on the 15th day of October, 1870."

2d. "The liens on the real estate and each parcel thereof, owned by the defendant, A. H. Wilson, the holders of such liens, the amount due to each, and the priorities thereof."

3d. "What debts contracted by the defendant, A. H. Wilson, constitute a lien or charge on the house and lot on Broad street, held by W. E. G. Gillison, trustee, for Mary E. Wilson, the wife of said A. H. Wilson, and mentioned in the bill, and by whom the same are now held, and the amounts and priorities thereof, and what other liens, if any, on said house and lot, and their amounts and priorities."

4th. "Any other matter the said commissioner may deem pertinent, or any party in interest may require, or that may be required by the mandate of the Supreme Court of Appeals or the opinion accompanying the same."

And the Court further required the commissioner to publish the notice to lien holders prescribed by section 7 of chapter 126 of the Acts of 1882.

On the 15th July, 1885, Mary E. Chilton, the widow of Wm. E. Chilton, by leave of the Court filed her petition in said cause claiming dower in the two parcels of 230 and 66½ acres of land, conveyed by said Alexander H. Wilson to Martha E. Chilton by the deed dated 22d February, 1875, basing the claim to dower therein, upon the following facts : Before and on the 30th Nov'r, 1866, these lands belonged to Joseph B. Chilton, who on that day conveyed the same to one Gillison in trust to secure to her husband, Wm. E. Chilton, one note of $2,470 and one of $2,134, dated, respectively, June 12, 1865, and August 25, 1865, and payable in twelve and eighteen months after their respective dates, and also a note of $1,950, to one Chandler, dated 22 Nov'r, 1865, payable in twelve months thereafter.

In December, 1867, one Gandee recorded a judgment against said Joseph B. Chilton for $1,800, with interest from April 4th, 1866, and $9.88 costs. which was also a lien on said lands.

During the year 1868 Joseph B. Chilton was adjudged a bankrupt, and these lands having been conveyed to his assignees, were sold and conveyed by them under the decrees of the bankrupt court, subject to said trust, and judgment liens thereon to Wm. E. Chilton at the price.of *ten* dollars.

On the 25th October, 1872, Wm. E. Chilton had become the owner of the Chandler debt of $1,950.

On the 16th Sept., 1872, said Gandee instituted his suit in the Circuit Court of Kanawha county against said Joseph B. Chilton and wife, Wm. E. Chilton, Gillison, trustee, Chandler and said assignees in bankruptcy to enforce the lien of his judgment of $1,800 against the said lands.

On the 25 March, 1874, Wm. E. Chilton assigned to said A. H. Wilson, the three bonds secured by said trust deed; and this fact having been made to appear in said cause, it was on the 9th June, 1874, adjudged, ordered and decreed that said Joseph B. Chilton do pay first to said A. H. Wilson, assignee of Wm. T. M. Chandler and Wm. E. Chilton, the sum of $9,549.42, and second to Wm. Gandee the sum of $1,347.10, with interest on both amounts from June 8, 1874, and the costs, and in default of payment for twenty days— special commissioners appointed for the purposes, were directed to sell said lands on the terms prescribed,—which on the 22 August, 1874, was done, and A. H. Wilson became the purchaser of the 230 and 66½ acres of land at the price of $5,000 which sale was confirmed. Of this sum he paid $237.70 in satisfaction of the costs of suit and expenses of sale, and the residue of $4,762.30 the court applied in part satisfaction of the amount decreed to him.

She further stated that she was not a party in the suit of *Gandee* v. *J. B. Chilton*, and that she had never parted with her dower interest in said lands, and prayed that her dower may be assigned to her in kind, or if the court deem best, that the value thereof in money be decreed to her out of the proceeds arising from a sale of the lands and for general relief.

On the filing of this petition, the court referred it and the matters arising thereon to Commissioner Gallagher to report upon the merits thereof in addition to the matters before referred to him,—with leave to the complainant to answer the petition.

On the 12 March, 1886, the Kanawha Valley Bank demurred to said petition, on which demurrer no action was taken.

On the 19 March, 1886—S. J. Meadows, W. P. Miles and his wife, Fannie Miles, and Nelson Hill also filed their petition in said cause, alleging that they owned by separate par-

.cels aggregating 144 acres, out of the tract of 1,212, heretofore
directed to be sold; that they derived title thereto, under con-
·veyances made by one Jane Matthews, who as one of the
nine children of John Wilson was entitled to one undivided
ninth part thereof; that by agreement among the heirs of
John Wilson, this land was suffered to become delinquent
for the non-payment of the taxes for the years 1861 and 1862,
.and to be sold, and that at the sale thereof on the 3d Oc-
tober, 1866, A. H. Wilson purchased the same for the ben-
.efit of himself and his co-heirs, and on the 12th October,
1868, the land was conveyed to him by the recorder of the
.county; that after the sale, and before the execution of said
deed, the land was by mutual consent partitioned and a cer-
tain lot was allotted to said Jane Matthews, but no deed was
ever made to her by A. H. Wilson or any of the rest of the
heirs, nor was said partition ever recorded,—though they
are informed and believe, that she was placed in, and re-
tained possession of her lot until she conveyed it in par-
.cels in 1884, 1885 and 1886, under which conveyances the
petitioners claim the parcel so conveyed to them. .

They then recite, the proceedings had in said cause,
whereby this court adjudged, that all of said 1,212 acres be-
longed to A. H. Wilson, and decreed the same to be sold for
the payment of his debts; and aver that when Blaine ob-
tained his deed of trust, he had knowledge of the right of
said Jane Matthews in the land, and pray that their rights
in the premises may be protected, and that A. H. Wil-
son may be decreed to make and execute proper deeds to
them for their respective parcels of the said lot, and for gen-
eral relief.

To this petition the Kanawha Valley Bank demurred, and
to so much thereof as is taken for answer to the bill, it re-
plied generally, and in addition thereto filed a special reply,
denying that the petitioners or any of them, then had, or
ever did have any interest in said 1,212 acres of land; that
petitioners are *pendente lite* purchasers; that they and
each of them are precluded by the statute of limitations and
also by the statute of frauds, from setting up any claim to
said land, which defences are relied upon and that they were
not innocent purchasers, but purchasers with actual notice

82

of the lien of the plaintiff's judgment, as well as of all the other judgment liens set up in the cause against A. H. Wilson.

The court overruled the plaintiff's demurrer, and directed Commissioner Gallagher "in addition to the other matters referred to him, to inquire into and make report upon the matters and things arising on said petition."

On the 12th day of June, 1886, Commissioner Gallagher returned his report whereby he ascertained the amounts and priorities of all liens upon the lands owned by said A. H. Wilson, or which he had fraudulently conveyed to his sister, Martha E. Chilton, which he had created, or which had been created by others, and bound the same in his hands or in the hands of his alienee, and also the liens against the house and lot on Broad street which had been conveyed by Hansford as trustee for the benefit of said Mary E Wilson.

Among the debts so reported is the Blaine trust debt of $1,500.00, amounting on the 1st day of March, 1886, to $2,902.50 which is declared to be a lien on said house and lot as well as the first lien on the tract of 1,212 acres of land; and a debt of $394.86 including interest to March 1, 1886, due to the Kanawha Valley Bank by A. H. Wilson on the 15th day of October, 1870. It is unnecessary to notice the other debts reported, as there is no contention about any of them.

The commissioner reported that the petitioner Mary E. Wilson was not entitled to dower in the lands mentioned in her petition.

He further reported that he did not find a material fact to be otherwise than as claimed by the petitioners, Meadows, Miles and Hill; that the facts are in the main true as stated in that petition; and that Blaine at the time he obtained from A. H. Wilson his trust-deed to secure his debt of $1,500, had knowledge of the fact, that the other heirs of John Wilson had some legal or equitable interests in the 1,212 acres of land, though he did not know exactly what that interest was.

He further reported that the petitioners had no standing in the cause, as against the creditors of A. H. Wilson.

To this report the petitioners, Meadows, Miles and wife and

Hill, filed three exceptions—all in substance, that the commissioner in his finding in relation to their pretensions, had mistaken the law.

Mary E. Chilton also excepted to so much of the report as refers to her petition, and to any conclusion of the commissioner arising thereon, and especially in so far as he reports she was not entitled to dower in the lands mentioned in the petition.

There were no exceptions filed by any of the parties to the report, so far as it ascertained and reported the amounts and priorities of the debts upon said house and lot, or upon any of the lands owned by A. H. Wilson, or by him conveyed to Martha E. Chilton.

On the 20th July, 1886, the cause was again heard upon the papers formerly read, all former orders and decrees rendered herein, together with the mandate of this Court rendered herein; the petition and answer of S. J. Meadows, Hill and Miles and wife, general and special replications thereto; the petition of Mary E. Chilton and the demurrer thereto, and upon the second report of Commissioner Gallagher, on consideration whereof, the court overruled said exceptions to said last report, confirmed the same, dismissed the petition of said Meadows, Miles and Hill, and adjudged that said Mary E. Chilton was entitled to dower as claimed in her petition, and with her consent ordered, that she be paid out of the proceeds of the sale of said lands when made, the cash value of her dower therein, to be thereafter ascertained.

The decree then declared the several debts reported, to be liens, upon said house and lot, and said 1,212 acres, and upon the said lands conveyed by A. H. Wilson to Martha E. Chilton, in the order of priority fixed in the second report of said commissioner, and decreed that special commissioners appointed for the purpose, should sell said lands in the following order,—first, the house and lot on Broad street to pay the Blaine debt, and $394.86 of the plaintiffs' judgment of $3,104.64, and in case the house and lot prove insufficient to pay all the Blaine debt, then for such deficiency, the 1,212 acres, including the 142 acres thereof conveyed to Mary A. Wilson; and in the event the proceeds of said sales prove

insufficient to pay the liens ascertained to exist, the special commissioners should, of the lands conveyed by A. H. Wilson to Martha E. Chilton, sell first the 66½ acres of bottom land, and the life estate of Joseph B. Chilton in 7 67-100 of bottom land adjoining the same, and lastly said *230* acre tract.

From so much of said decree as gives to the petitioner, Mary E. Chilton, dower in 66½ and 230 acre tracts, the plaintiff, the Kanawha Valley Bank, has appealed.

From so much thereof as dismissed the petition of Meadows, Miles and Hill they have appealed.

From so much thereof, as declares the trust debt of W. C. Blaine of $2,902.50, and the debt of the Kanawha Valley Bank of $894.86 to be liens on the house and lot conveyed by Gillison, trustee, for Mary E. Wilson, and as directs the same or the tract of 1,212 acres of land or any part to be sold, an appeal and supersedeas were allowed to Mary E. Wilson.

*W. A. Quarrier* and *G. S. Couch* for Bank.

*Watts & Camden* for Meadows, Miles & Hill.

*S. A. Miller* for Mary E. Wilson.

*J. F. Brown* for Mary E. Chilton.

WOODS, JUDGE :

The first error complained of by the Kanawha Valley Bank is, decreeing to the petitioner, Mary E. Chilton, dower in the 66½ and 230 acres of land.

It is insisted in argument, by her counsel, that her husband, Wm. E. Chilton, having purchased from his assignees in bankruptcy, "all the right, title and interest of Joseph B. Chilton," in said lands, subject to said trust debts, and the judgment of Gandee for $1,800, and having become the owner by assignment of the trust debt of $1,950 to Chandler, —that Wm. E. Chilton thereby was seized in equity of the said lands.

By his purchase from the assignees, Wm. E. Chilton, according to its very terms, only acquired the title of the bankrupt to these lands, subject to the trust debts due to himself and to Chandler, as well as to the judgment of Gandee. The

legal title to the lands was out-standing in the trustee Gillison, and neither Wm. E. Chilton, Chandler nor Gandee could call in the legal title for his benefit, any more than could Joseph B. Chilton. All these liens were superior to any claim of dower of the wife of any purchaser of the mere equity of redemption, owned by Joseph B. Chilton and so sold by his assignees.

If this equity of redemption at the sale thereof made by the assignees had been purchased, by Gandee, or any other person not interested in the said trust debts, no one would pretend that the widow of such a purchaser could rightfully claim dower, in any greater interest in the lands than what would remain after discharging the trust debts.

The only interest that Wm. E. Chilton acquired in these lands by the purchase of this equity of redemption, was what might remain when the liens thereon were discharged, and in such residue his widow would be entitled to dower. He possessed an equitable interest in the land, it is true, but subject to superior equities, which unless otherwise discharged, might, as in this case they did, extinguish this equity of redemption. When he transferred to A. H. Wilson the trust debts, the equity of redemption in his hands, remained and continued chargeable therewith.

There was no moment of time when Wm. E. Chilton had the right to compel the trustee to convey to him the legal title to the lands. By the deed of trust he acquired the equitable right to charge the land with the payment of the trust debts; but no interest in the land itself.

By his judgment Gandee acquired a similar right, subject only to the prior right of the trust creditors, who had the right to enforce, and did enforce by his suit to sell the lands, the result of which was a complete extinguishment of the equity of redemption, and with it, all rightful claim of Mary E. Chilton to dower therein.

It was claimed by her counsel in argument that when her husband, Wm. E. Chilton, acquired the equity of redemption, in addition to the trust debts secured upon the property, the debts merged into the equity of redemption, and gave the husband an unincumbered estate in the lands, in which his wife was entitled to dower.

This is a clear mistake; in such case there can be no merger, for that can never happen, except where a greater estate and a less coincide, and meet in the same person, without any intermediate estate. In that case the less estate is immediately annihilated, or in law phrase is said to be sunk or drowned in the greater. (*Blk. Com. Book*, 2 p. 177.

In this case the legal title, the larger estate was vested in the trustee, the equity of redemption, the less estate was vested in Wm. E. Chilton, they never united in him, and there could not otherwise be a merger of title.

Wm. E. Chilton never having been seized of any estate of inheritance in the lands mentioned in the petition of his widow, Mary E. Chilton, she is not entitled to dower therein, and therefore the court erred in overruling the plaintiff's demurrer to her petition.

In regard to the appeal taken by Meadows, Miles and Hill little need be said. We concur in the line of argument followed by their counsel, that as neither Jane D. Matthews, nor any of the petitioners, or any of the persons through whom any of them claim any portion of said land were parties to this suit at the time the decree of the 27th day of June, 1879, was rendered, or at the time the appeal therefrom was decided by this court, they are not in any manner barred of any rights they had in the said land, or precluded from enforcing the same, by reason of any of the proceedings had in this cause in the Circuit Court, or in this Court, before the filing of their said petition, and that up to that time the proceedings as to them or any of them, was not *res adjudicata*, and the same is equally true as to all the other heirs of said John Wilson, or their assignees, who have never been made parties to the suit.

Until the filing of their petition they were not, and they could not be affected by legal proceedings, to which they were not in any manner made parties; and they were not, in contemplation of law and could not be affected thereby.

While it is clear to our minds, that A. H. Wilson by his purchase under said tax-sale, and by the recorder's deed executed to him acquired the title of all the heirs of his father John Wilson in and to the 1,212 acres of land as it was vested in them at the commencement of the years 1861 and 1862,

and that the deed of trust made by him to Gillison to secure the payment of the Blaine trust debt of $1,500, operated to convey to said trustee the title so acquired to all the 1,212 acres, not before that time conveyed to any other person, and that his title to all of said tract except the 142 acres conveyed by him to Mary E. Wilson, was subject to the liens of the several judgments reported by Commissioner Gallagher, it does not necessarily follow, that it is discharged of any trust attaching thereto, in favor of his co-heirs. *Batton* v. *Woods*, 27 W. Va. 58.

These petitioners are not precluded from claiming their rights in the lands mentioned in their petition, if any such they have, nor should they be denied the privilege of asserting and establishing the same in this suit, and be compelled to institute, an independent proceeding of their own for that purpose. Until the rights of these petitioners, and of all the other heirs of said John Wilson, can be ascertained and settled, no person can safely purchase the interest of A. H. Wilson in said 1,212 acres of land. Before this can properly be done, the heirs of John Wilson, or the persons claiming under them, should be made parties defendant to this suit, and for this purpose the bill must be amended, and they be made defendants, that the court, before directing a sale of the land, may ascertain and determine what interest, in said land is owned by A. H. Wilson, and what interest therein passed to the trustee Gillison, to secure the Blaine debt. If the allegations of the petition be established, and other of said heirs have interest in said land, an account of the rents and profits, thereof, as well as the taxes thereon paid by A. H. Wilson or any other of said heirs, should be taken and all moneys expended by him in acquiring said title according to the principle applicable to such accounts between co-tenants, see *Dodson* v. *Hopwood*, decided this term, that the rights of all parties interested may be ascertained and determined before any sale of the 1,212 acres of land shall be made, We are therefore of the opinion that the Circuit Court erred in dismissing the petition of said Meadows, Miles and Hill.

As to all the parties before the court when on the former appeal, all the questions now presented for consideration

by the appeal of Mary E. Wilson from the decree of the Circuit Court rendered herein, on the 20th day of July, 1886, were presented for our consideration, and it was then adjudged by. this Court, that the defendant, Alexander H. Wilson, by his purchase at the tax sale made on the 6th day of October, 1866, and by the execution and recordation of the deed made to him by John Slack, recorder of Kanawha county, was vested with all the title of the heirs of his father John Wilson, in and to the tract of 1,212 acres of land, which was vested in them at the commencement of the years 1861 and 1862; that the deed of trust executed by A. H. Wilson on the 1st day of August, 1870, to Gillison, to secure to Blaine his debt of $1,000, operated to convey to him all of said 1,212 acres of land, not before that time, and after October 12, 1868, conveyed by him to any other person, and that the tract of 142 acres conveyed to Mary E. Wilson is subject to said deed of trust; and that the several judgments reported by said commissioners were liens upon all of the tract of 1,212 acres except the tract of 142 acres conveyed to Mary A. Wilson, subject to the prior lien of the trust deed to secure the Blaine debt,—and that the house and lot conveyed by Hansford and wife to Gillison, trustee, for the sole and separate use of said Mary E. Wilson was chargeable with the amount of said Blaine debt as well as with so much of the plaintiff's judgment of $1,868.82 as was due to it at the time said dwelling house was completed, "which from the record as it then appeared was $407.48 as of date of the 15th day of October, 1870.

This last named debt, having been improperly reported by the commissioner, and his report for that cause having been excepted to by Mary E. Wilson, this Court was of opinion that the report should have been re-committed to the commissioner in order that the same might be properly reported, and hence in declaring the liens on the "house and lot" this Court decided, that in addition to the Blaine debt, it was chargeable "with *so much* of the plaintiff's judgment of $1,868.82, as was due at the time the dwelling house was completed," which was on the 15th day of October, 1870. The Circuit Court having failed to publish the notice to lien-holders required by section 7 of chapter 126 of

the Acts of 1882, this Court said, "it must not be overlooked, that before any decree of sale of said lands could be rendered such notice must be given and a report in pursuance thereof made by a commissioner ascertaining the liens on said lands and that until this has been done, the commissioner's report, so far as it ascertains the liens and their priorities on the debtor's lands, ought not to be confirmed, because every creditor having a right to prove his debt before such commissioner may controvert the claim of any other lien-creditor."

When the cause was remanded, the question as to the amount and priorities of these liens was left open, and the Circuit Court properly recommitted the cause to the commissioner, for the purposes specified in its decree of 7th April, 1885.

The commissioner's second report, with a single exception, report the same debts, in the same order of priority and for the same amounts, including interest accrued up to the 1st of March, 1886, except that the amount of the debt due the plaintiff and included in its judgment of $1,868.82, which was due to it on the 15th October, 1870, the time when the dwelling house was completed, was reduced to the sum of $205.48, with interest from that day amounting on the 1st March, 1886, to the sum of $394.86.

So much of this second report as ascertained and declared the amount and priorities of the liens on said house and lot, and upon the 1,212 acres and upon the lands fraudulently conveyed by A. H. Wilson to Martha E. Chilton was not excepted to; and but for an error appearing on the face thereof ought to be confirmed in these respects.

The commissioner in his report and the Circuit Court acting thereon upon the mistaken idea, that the existence of this debt of $394.86 was by the former decree of this court *res judicata*, decreed that this debt, as well as the Blaine debt, was a lien on said "house and lot" on Broad street in the city of Charleston.

But it further appears from the face of said report, as well as the evidence returned with and made part thereof, that on the 15th October, 1870, when said dwelling house was completed, A. H. Wilson was not indebted to the plaintiff in any sum whatever, the court erred in declaring the same

to be a lien on said house and lot, and charging the same with the payment thereof, and for this error the decree appealed from as to this debt, must be reversed, and the debt disallowed as a charge against the "house and lot."

There is another error which although not appealed from, is apparent on the face of the decree, and which must be corrected, because it is clearly in conflict with the decision rendered by this Court on the former appeal. It was there adjudged, that while the Blaine debt was a lien on the " house and lot, " and was also a lien on all the 1,212 acres of land, yet the judgment liens reported were only liens on 1,070 acres, the residue of the 1,212 acres remaining after deducting the 142 acres conveyed to Mary A. Wilson prior to recovery of any of the judgments. It followed therefore, that the 142 acre tract could not in any event be made liable for any of the judgments, and could only be resorted to for satisfaction of so much of the Blaine debt as might remain unsatisfied by the application thereto of the proceeds of the sale of the "house and lot" and of the 1,070 acres of the 1,212 acres.

But by the decree of the 7th of April, 1886, it is adjudged, "that if any of the Blaine trust debt shall remain unsatisfied out of the proceeds of the said " house and lot, " then to satisfy such remainder, the special commissioners shall sell the 142 acres conveyed to Mary E. Wilson as aforesaid as well as the residue of the 1,212 acres.

So much of this portion of said decree as directs the special commissioners to sell the 142 acres, upon the contingency above stated is erroneous, must be reversed and amended by striking out the words, " and that if any of said Blaine trust deed debt shall remain unpaid and unsatisfied out of the proceeds out of the said house and lot in the city of Charleston, " and inserting in lieu thereof the words " and if the proceeds arising from the sale of the house and lot in the city of Charleston and of the 1,070 acres be insufficient to pay and satisfy the Blaine trust debt. "

We are of opinion, that the decree should be further corrected by striking out so much thereof as declares, that the said sum of $394.86 was an existing debt due from A. H. Wilson to the plaintiff, on the 15 October, 1870, and that the

same was a lien upon said "house and lot," and the same is now here accordingly so corrected. We are further of opinion that all other questions sought to be raised by the appellant, Mary E. Wilson, are as to her *res adjudicata* and can not now be disturbed. For the reasons hereinbefore stated, so much of the decree of the Circuit Court of Kanawha county, rendered herein on the 20th July, 1886, as adjudged the appellee, Mary E. Chilton, to be entitled to dower in the lands in her petition mentioned must be reversed, with costs in this Court and in the Circuit Court to the appellant, the Kanawha Valley Bank, against said appellee; and that so much of said decree as dismissed the petition of said Meadows, Miles and Hill, and as directs the sale of any part of said 1,212 acres of land, until the inquires hereinbefore directed can be made and the true state and condition of the title thereto ascertained and determined, must also be reversed with costs to the appellants, Meadows, Miles and Hill, against the Kanawha Valley Bank, and that the residue of said decree as hereinbefore amended and corrected must be affirmed, and that the Kanawha Valley Bank must pay to the appellant, Mary E. Chilton, the costs of her said appeal. And this cause is remanded to the Circuit Court to be further proceeded in according to the principles settled in this opinion, and further according to the rules governing courts of equity.

AFFIRMED IN PART. · REVERSED IN PART. REMANDED.