# CHARLESTON.

William Deering & Co. *v.* Coberly *et al.*

## Submitted February 2, 1898—Decided April 6, 1898.

1. PARTNERSHIP—*Formation of Partnership—Written Articles—Parol Contract.*

    No particular form or solemnities are required to constitute a partnership between parties. It is sufficient that it is formed by the voluntary consent of the parties whether that be expressed or implied; whether it be by written articles or unsolemn writings; or whether it be by tacit approbation, or by parol contract, or even by mere acts. (p. 610).

2. MOTION FOR NEW TRIAL—*Evidence—Conflicting Evidence—Appeal.*

    Upon a motion for a new trial, where the same has been overruled and an exception taken, all the evidence whether conflicting or not, must be certified, and this Court must consider all such evidence on both sides, though conflicting, not rejecting any. (p. 611).

3. EVIDENCE—*Conflicting Evidence—Setting Aside Judgment.*

    If upon such evidence the finding of the jury or judge plainly appears to be contrary to the evidence or without sufficient evidence, or plainly against the decided and clear preponderance of evidence, it ought to be set aside, even though the evidence be conflicting. (p 611).

Error to Circuit Court, Randolph County.

Action by William Deering & Co. against Coberly & Harper on a note. There was a judgment for Coberly against plaintiff, who brings error.

*Reversed,*

C. F. TETER, GEO. W. LEWIS and W. N. WILSON, for plaintiff in error.

E. D. TALBOTT, for defendant in error.

ENGLISH, JUDGE:

On the 11th day of February, 1892, William Deering & Co., a corporation under the laws of the State of Illinois, entered into a contract in writing with W. H. Coberly, of Elkins, W. Va., for the sale of the harvesting machinery of said corporation in said town and vicinity, for the year 1892, and it was thereby agreed that all notes taken for machinery sold thereunder should be drawn payable to the order of Wm. Deering & Co., using the blanks provided by them.

It was further provided to guarantee the payment of such notes in the form then used by Wm. Deering & Co., in such case. It was intended that notes taken from purchasers should be such as should be good without further security at any local bank; and if any note or notes be turned over as being of that character, and Deering & Co. should within six months discover a mistake in so rating the same, said agent should make it good. During the summer of 1892 said Coberly made an arrangement with the defendant D. P. Harper, by which said Harper was to assist him in the sale of machinery for Deering & Co., under said contract; and they did so during that season.

In November, 1892, Coberly and Harper settled with one of the agents of Deering & Co.. The notes taken for machinery seem to have been left at Harper's store, and among them were several not drawn in accordance with the said contract, and the agent of Deering & Co. refused to accept them, but offered to take Harper's individual note for the aggregate of said notes guaranteed by the firm of Coberly & Harper by writing on the back of same. In pursuance of this proposition Harper executed his note to said Company for two hundred and sixty-five dollars and forty-nine cents payable on or before the 1st of Oct., 1893, and signed the name of Coberly & Harper to the contract of guaranty printed on the back of note, guaranteeing that

the indebtedness mentioned in the within note with interest at the rate agreed on, would be paid by the maker thereof at maturity, and consenting that the time of payment might be extended, or new note or security for the same debt taken, and the guaranty should extend and apply thereto, thereby waiving protest, demand and notice of non-payment, and necessity of suit against any party to that note or any note taken in its place.

On the same day a second agreement was made between said Co. and Coberly & Harper to act as agents for the sale of machines for the ensuing year, but before the contract was returned from the home office at Chicago, Coberly withdrew, and Harper conducted the business alone for the years 1893–4. Harper became insolvent and the Company failing to collect the debt from Harper demanded the payment from Coberly which was refused and this action of *assumpsit* was brought in the circuit court of Randolph county, against the firm of Coberly & Harper to enforce said contract of guaranty. Coberly plead *non assumpsit*, and filed a special plea denying the partnership, denying that he had given Harper authority to sign the name of Coberly & Harper to the guaranty, and that he had never had any interest in said note. The case was submitted to the court in lieu of a jury, and judgment was rendered for Coberly against the plaintiff for his costs and against Harper for the amount due on the note with costs. The plaintiff thereupon moved the court to set aside the judgment as to the defendant Coberly and to grant a new trial; which motion was overruled, the plaintiff excepted, and obtained this writ of error.

It is claimed that the court erred in finding for the defendant Coberly, and the question raised by this assignment of error must be solved by looking to evidence that was brought before the court.

The defendant Coberly took the stand in his own behalf, and on cross examination admitted that he executed the contract with Wm. Deering & Co., of Feb. 11th, 1892 and that he received and sold machines in pursuance of the contract, by the terms of which it was agreed that all notes for the purchase money of machines should run to the order of William Deering & Co., using the blanks provided by them.

It was further provided that to guarantee the payment of such notes in the form then used by Deering & Co., in such case, it was intended that notes taken from purchasers should be such as should be good without further security at any local bank in the vicinity, and if any notes were turned over as being of that character, and Wm. Deering & Co. should within six months discover a mistake in so rating the same, said agent should make the same good.

The machines for which the note in controversy was executed were received under this written contract between Corberly and plaintiff and sold and the stipulations of said contract applied to these sales.

Now, while it is true that shortly after the date of this contract, at least before the season for selling the machines arrived, Coberly made an arrangement with Harper by which he was to assist him in the sale of machinery under Coberly's contract with plaintiff, and said Harper did assist him, took notes and attended generally to the business, paying freight on the machines when received, etc., etc.

As to the machines for which this note was executed, Coberly was asked this question: "What the court wants to know is if the machines that the note was given for were shipped to Coberly & Harper?" and replied, "It was machines we had got." He was then asked: "Was it shipped to you and Harper or to you individually?" and answered, "Me, individually."

Was there a partnership between the defendants Coberly and Harper? Coberly denies it in his plea and testimony, while Harper swears that he and Coberly sold Deering machines for the year 1892, acting as the firm of Coberly & Harper. It appears that the same day the note sued on was executed, to-wit: the 15th day of November, 1892, a contract was signed for the sale of said machines for the year 1893 between the plaintiff's agent and Coberly & Harper. Coberly swears that this contract was not accepted until the 12th of January and "I pulled out."

Now the fact that this contract of the 15th of November, 1892, was signed by Coberly & Harper, and taken by the agent to the head office at Chicago for acceptance is a

strong indication that business was done by these defendants in the name of Coberly & Harper.

Story on Partnerships, 7th Ed., sec. 86, says, "At the common law no particular forms or solemnities are required to constitute a partnership between the parties. It is sufficient that it is formed by voluntary consent of the parties, whether that be expressed or implied; whether it be by written articles or unsolemn writings, or whether it be by tacit approbation or by parol contract or even by mere acts."

D. P. Harper in delivering his testimony in the case was asked: "Who were the firm of Coberly & Harper?" and answered, "Wm. H. Coberly and myself sold Deering machines the year of 1892;" and also stated that they were acting as the firm of Coberly & Harper, and he was in the habit of signing the name of Coberly & Harper in their business transactions in relation to the machine business. In regard to the machines for which the note was given, when asked if said machines were shipped to Coberly & Harper, Coberly answered, "It was machines we had got;" but also states they were shipped to him individually.

Now if such was the case the presumption is they were shipped to him under the written contract by which he was bound to guarantee the payment of the notes for which they were sold, and it is noticeable that Coberly does not deny that the note on which was written the guaranty contract was executed for machinery which the plaintiff had delivered to him and which was sold under his contract with plaintiff, but, as above stated, he says these machines were shipped to him individually. This of course would be the case, as Coberly held the contract with Deering & Co., and was primarily liable to guarantee the payment of the notes taken for the machinery sold.

The note in controversy appears to have been for machines received by Coberly and sold to different parties, and when Harper undertook to settle with the plaintiff's agent, it was found that Harper had bought one and his brother another, so that Harper wanted to give his individual note to plaintiff for the amount, but the agent was not willing to accept it without the guarantee of Coberly &

Harper. Harper was also asked if he notified Corberly about endorsing said notes before endorsing, and answered, "I went over to the barber shop and spoke to him about it before I endorsed and told him the agent required our names on the backs and he at first said it was not his understanding, but finally said, if it was necessary why I should have to endorse them;" and he further says the company did not take any of the notes without their name on the back of them.

Now when we refer to Coberly's testimony he at first swears positively that he did not authorize Harper to sign Coberly & Harper on this note, but finally, on cross-examination when asked, "Did you not authorize him to put the name of Coberly & Harper on them—(meaning the notes)—tell him to put it on?" answered, "I don't know whether I did or not, but I told him it wasn't my understanding. I got a little on my ear about it. I don't know what I did say because it wasn't my understanding that there was anything of that kind, only to take a straight individual note for anything that was sold." So Harper in his testimony swears positively that while Coberly objected at first he afterwards told him to endorse the names. Coberly swears he don't know whether he did or not, so Harper's testimony remains uncontradicted. And, again, if Coberly had read the contract under which he was acting, he would have known that he had contracted with plaintiff to guarantee this note.

Harper says that he was in the habit of signing the names of Coberly & Harper in their business transactions, and the fact that Coberly & Harper were the parties of the second part in the new agreement, dated November 15th, 1892, and signed said agreement, shows that they were recognized as a firm, although Coberly says the contract was not accepted until January 12th and he "pulled out."

These facts taken in connection with the circumstance that the defendant Coberly, by the agreement between himself and plaintiffs dated the 11th of February, 1892, agreed to guarantee such notes and make them good, and considering all of the evidence, whether conflicting or not, as this Court held we must do under section 9 of chapter 131 of the Code, in the case of *Johnson* v. *Burns*, 29 W. Va.,

658, my conclusion is that the court erred in everruling the plaintiff's motion to set aside the finding and judgment as to said Coberly, and grant them a new trial,

The judgment is reversed, with costs, and this Court proceeding to render such judgment as should have been rendered, judgment is given for the plaintiff.

*Reversed.*