# CHARLESTON

CHADISTER *v.* BALTIMORE & OHIO RAILROAD COMPANY.

Submitted June 7, 1907.   Decided November 12, 1907.

1. APPEAL—*Record—Bill of Exceptions—Sufficiency.*

   A bill of exceptions, otherwise sufficient, which of itself and of its own matter and character identifies itself as the bill mentioned in the order of the court certifying its execution, although the letters of identification referred to in the order are omitted from the transcript, is sufficient to make it a part of the record. (p. 568.)

2. SAME—*Review—Sufficiency of Exceptions.*

   In an action at law, if it appears in the orders or judgment of the court, or in any other proper manner by the record, that a mo-

tion to set aside the verdict and award a new trial has been made, overruled and exception taken, it is not essential that there be other objections to such ruling of the court in order to entitle the defendant to review thereof by the Appellate Court. (p. 569.)

3. TRIAL—*Instructions.*

An instruction to the jury, where there is no appreciable evidence to support it, is improper and should not be given. (p. 570.)

4. APPEAL—*Review—Prejudicial Error.*

Where the party objecting may have been prejudiced by such instruction, the giving of it constitutes reversible error. (p. 575.)


Error to Circuit Court, Harrison County.

Action by Joseph Chadister against the Baltimore & Ohio Railroad Company. Judgment for plaintiff, and defendant brings error.

*Reversed.    New Trial Granted.*


JOHN BASSEL, for plaintiff in error.

MILLARD F. SNIDER and F. G. VIGER, for defendant in error.

MILLER, PRESIDENT:

Three horses of a team of six, in charge of three teamsters, were killed by a passenger locomotive of defendant westward-bound from Grafton, at a public crossing called Despard Mine Crossing, in Harrison county, August 30, 1904. Just a few moments before, at another crossing west of the Despard Crossing, these teamsters were warned by a watchman of their danger from the passenger train then about due. After making the first crossing, a west-bound freight train was noticed, but mistaken by the teamsters for the train against which they had just been warned.

The declaration, with bill of particulars filed, would render the defendant liable for alleged breach of duty in three particulars, namely: for failure to blow the whistle or ring the bell, so as to give timely warning of the approaching train; failure to stop the train before reaching the crossing, when in sight of the horses upon the crossing; and failure to maintain a sign-board at the crossing with the usual warn-

ing. The evidence was conflicting on the first ground, and the instructions and rulings of the court below relating thereto it is conceded were fairly and properly presented. There was little or no effort made to establish the last ground, and the point was not relied on below and is not here. The controversy here relates to the second.

Upon the trial there was a verdict and judgment for the plaintiff for $750.00. The only error relied on by the plaintiff in error is the giving of the following instruction at the instance of the plaintiff below: "If the jury believe from the evidence that the plaintiff's horses were injured by the defendant's engine while the horses were on a public road crossing, and that the persons in charge of the engine could have seen the horses on the track or in dangerous proximity thereto, in time to have stopped the engine and prevented the injury, and did not see them, or, seeing them in time to have avoided the injury, did not do so, this would be negligence for which the company would be liable, unless the plaintiff, through his teamsters, was himself guilty of negligence which contributed to the injury of which he complains."

The defendant in error would preclude us from considering this instruction upon two grounds: first, that the transcript of the evidence, as contained in the bill of exceptions, is not identified by the letters "C. W. L." called for in the order of the judge; second, that by not objecting and excepting to the entry of judgment upon the verdict, and preserving the same on the record by proper bill of exceptions, all prior errors were waived. We must dispose of this preliminary question; for, unless we are permitted to look into the record of the evidence, if any, upon which the instruction was founded, or if the plaintiff has waived the error as claimed, we are precluded from further consideration thereof. The order of the court making up the bill of exceptions, properly styled in the case, was entered May 19, 1906, and recites that the defendant that day presented a transcript of "the evidence adduced upon the trial of said action by both the plaintiff and the defendant, which transcript for the purpose of identification is marked with the letters C. W. L., being all the evidence offered therein by both parties, together with true copies of the instructions

given at the instance of both plaintiff and defendant, together with the exceptions of the defendant to the rulings of the court upon said trial and upon the motion for a new trial, making up the complete bill of exceptions tendered by the defendant," and the same was on the same day signed, sealed and made a part of the record.    While the letters of identification, "C. W. L." are not copied into the transcript, the bill of exceptions as printed is styled in the case; it contains various rulings of the court upon the trial, with the instructions referred to in the order, and in every other way answers the description in the order; it is certified by the judge of the court under seal on the date of the order, which certificate also shows that the defendant moved the court to set aside the verdict and grant it a new trial and excepted to the ruling of the court thereon.    The clerk also certifies that the transcript is a true copy of all the proceedings had, "as fully appears from the records in this office."    The bill of exceptions, therefore, "of itself and of its own matter and character identifies itself as the bill mentioned in the order of the court or the judge certifying its execution," and is properly a part of the record.    *Bank* v. *Wetzel*, 58 W. Va. 1; *Schwarzchild & Sulzberger Co.* v. *Railroad Co.*, 59 W. Va. 649 652; *Parr* v. *Currence*, 58 W. Va. 523; *Dudley* v. *Barrett*, 58 W. Va. 235; *Tracy* v. *Coal Co.*, 57 W. Va. 587; *McKendree* v. *Shelton*, 51 W. Va. 516; *Hughes* v. *Frum*, 41 W. Va. 445.    The bill of exceptions is complete in and of itself, not a skeleton bill with reference to other papers.    No writ of *certiorari* has brought the original paper here to impeach the genuineness of the transcript, as in *Woods* v. *King*, 59 W. Va. 418, and it would seem also in *Schwarzchild & Sulzberger* v. *Railroad Co.* So we conclude the bill of exception in the record is the one it purports to be and is properly a part of the record.

As pertinent to the question of waiver of error by the defendant, *arguendo*, we are cited to *Danks* v. *Rodeheaver*, 26 W. Va. 274, *Core* v. *Marple*, 24 W. Va. 354, and *State* v. *Phares*, 24 W. Va. 657.    These cases hold that, unless a motion is made to set aside the verdict and grant a new trial, and that motion overruled and an exception taken and noted on the record, the appellate court can not review the rulings of the lower court; but we are cited to no authority that ob-

jection and exception to the entry of judgment on the verdict must also be saved on the record, and we have found no such authority. In *Congrove* v. *Burdett*, 28 W. Va. 220, the point was made that, because on motion for a new trial no objection was made or noted on the record to the overruling of that motion, this Court could not review the action of the court in overruling such motion. JUDGE SNYDER in that case, reviewing *Danks* v. *Rodeheaver* and *State* v. *Phares*, holds that where a party moves for a new trial, and upon such motion being overruled he excepts, it is not essential that he also object to the action of the court in overruling this motion before he can have the ruling reviewed in the appellate court; that if the record shows that a motion was made, overruled and exception taken, this is sufficient and all that the rule declared by this Court in any of its decisions requires; and in this connection JUDGE SNYDER says: "If the fact that such motion was made, overruled and excepted to appears in the orders or judgment of the court, or in any other proper manner by the record, the appellate court will review any rulings of the inferior court made during the trial which are properly saved and presented by the record." We hold that this case is clearly within the rule of *Congrove* v. *Burdett*, and that the rulings of the circuit court are properly before us for review. Until judgment the whole matter remained in the breast of the court, and the previous error could have been corrected. By the final judgment the error, if any, was carried into it, and then became the subject of review here.

Was the instruction referred to well founded on the evidence? As an abstract proposition of law it is not challenged. It does not involve any question of negligence of the defendant's agents to blow the whistle or ring the bell, covered by other instructions, but whether or not the defendant's servants in charge of the locomotive could have seen the horses on the track or in such dangerous proximity to it, and did not see them, or seeing them in time to have avoided the injury, did not do so, and thereby negligently caused the injury. The evidence on both sides, including that of the civil engineer who made survey and plat of the crossing, track and ground adjoining, shows that the railroad at the Despard Crossing and east and west of it consists of the

main track on the north side and a side-track on the south
side, and approaches the crossing on a downward grade
from the east by a sharp curve to the south through a deep
cut on the north hillside; that when standing on the main
or north track the farthest distance eastward on this track
one can see is about six hundred and ten feet, and, because
of the cut through the intervening hillside, the farther south
on the public road one should be from the crossing the
shorter the vision eastward on the track. The engineer's
place on the right side of the engine going west put him on
the outside of the curve, the cab and the head of the engine
necessarily obstructing his view of the crossing in rounding
the curve through the cut; and, although at his post of duty,
he testifies he did not see the horses on the track until within
two hundred and fifty to three hundred feet from the cros-
sing. The evidence is that he was running at the rate of
thirty-five miles per hour; that, as soon as he saw the ob-
struction, he blew the whistle and applied the emergency
brake, which was all he could do to stop the train quickly;
that by reversing the engine the wheels are liable to be "skid-
ded" (that is, caused to slide on the track,) and the train
not brought to a stop as quickly as by the application of the
brake; that at the rate of speed of the train that day the
engineer estimated the train could be stopped by the appli-
cation of the brake in from nine hundred to a thousand feet,
depending on the locality. He estimated that he stopped
that day from nine hundred to a thousand feet beyond the
crossing; the fireman thought about eight hundred feet,
about twelve hundred feet from where the brake was first
applied, which he thought was about four hundred feet
from the crossing, the baggage master was of opinion the
train was stopped about one hundred feet beyond the
crossing; the conductor, about three hundred feet; the
brakeman, three hundred feet; the head teamster, about one
hundred feet. The fireman, it appears, was not looking
ahead at the particular moment his engine entered the cut
in question, but was down shoveling in coal; and it does not
distinctly appear at what distance from the crossing, if on
the lookout, he could have seen the obstruction on the
track; but he testifies that when the engineer blew the sec-
ond alarm this was notice to him to protect himself and the

passengers, and he then looked ahead, and it must have been about two hundred to two hundred and fifty feet from the engine to the obstruction.

The testimony of these trainmen was the only direct evidence on the subject covered by the instruction. No other witness was called to testify that a train like the one in question, traveling at the rate of thirty-five miles per hour, at that particular point could have been stopped by the application of any agency provided or which could have been provided, within less than nine hundred to one thousand feet; and, although it may have been the duty of the fireman to be in the cab and on the watch at the time, and if he had been might have seen the obstruction on the track and given the engineer earlier warning, yet the evidence of both parties is positive that the greatest distance an object on the track could be seen from the crossing, with no obstruction, was about six hundred feet, within which the train could not have been stopped and the danger avoided; besides, we may safely assume that, from the place of the fireman in the cab on the side next to the deepest part of the cut, with part of the engine ahead of him, his view must have been to some extent obstructed. A significant fact bearing on the question of contributory negligence is that, although the head teamster testifies that he left the team some six hundred feet from the crossing and went ahead and, standing on the track, motioned to the other teamsters to come ahead when they were from two hundred to two hundred and fifty feet from the track; that just as the lead horses placed their fore-feet about the center of the track on which the train was running, and within ten feet of where he was standing, he saw the train coming out of the cut; yet, he says, with this train plainly within his sight for six hundred and ten feet, he could not get these horses off the track in time to save them. This gives additional color to the positive evidence of the trainmen that it was physically impossible to have seen the obstruction or stopped the train in time to avoid injury.

Counsel concede there is no direct evidence contravening the testimony of the trainmen on the subject of the instruction, but argue that the discrepancy between the evidence of the engineer and fireman as to the distance of the engine

from the crossing when the emergency brake was first applied, coupled with the fact that the jury were taken upon the ground to view the premises, may have furnished some evidence upon which the court was justified in giving the instruction. We do not think this disparity in the evidence of these witnesses is material. How could the witnesses, under such circumstances, speak with absolute certainty regarding distance? Preservation of his own life and the lives of his passengers precludes the inference of any delay in the application of the brake by the engineer as soon as he saw the obstruction; his positive evidence is that he did everything possible to bring the train to a stop before reaching the crossing; and we know what was done, which we must say from the evidence was all that could have been done, was unavailing. How could a view of the premises by the jury have justified a different conclusion, or furnished evidential facts on which to found the instruction? In Virginia the supreme court of appeals, in a similar case, has recently said that the view by the jury of the grounds where the accident occurred did not authorize them to base their verdict on such examination or to become silent witnesses to facts not testified to in court; it did but the better enable them to apply the testimony disclosed on the trial. *Kimball* v. *Friend*, 95 Va. 125, 27 S. E. 901, 905. We are aware, however, that this Court in *Fox* v. *Railroad Co.*, 34 W. Va. 466, an action for damages to real estate by construction of a railroad track along a public street, held it was not error to refuse an instruction to the jury that they were not to take into consideration anything they saw or any impressions received at the view of the premises; and in *State* v. *Henry*, 51 W. Va. 283, 300, a murder case, that it was not error for the court of its own motion, after ordering a view of the premises, to instruct the jury that they should not consider as evidence any of the objects or locations pointed out to them upon the grounds. We think our decisions properly propound the law applicable to those cases. The Virginia case is not in conflict. That case, as we understand it, simply told the jury that as jurors, after viewing the premises, they were not to become witnesses to facts not testified to in court. This would preclude jurors from becoming witnesses, for example, as to the question of me-

·chanics involved here. Section 31, chapter 116, Code, following the one providing for a view by the jury, in plain terms inhibits a juror who may know anything relative to a fact in issue from disclosing it except in open court. He ·can not become a silent witness to facts not testified to in open court.

The proposition of plaintiff's counsel is that the jury ·may have disbelieved the evidence of the trainmen, and that the view of the premises may have furnished some slight ·evidence to support the instruction, that if there is *any* evi- ·dence tending to prove the facts supposed in an instruction ·the giving of it will not be regarded as reversible error. For this we are cited to *Carrico* v. *Railway Co.*, 39 W. Va. 87, and *Hopkins* v. *Richardson*, 9 Grat. 486. The *Carrico Case* ·does not so hold; but, in the light of other and subsequent ·decisons, it must be interpreted to mean any *appreciable* ·evidence. It was so ruled in the recent case in this court ·of *Kuykendall* v. *Fisher*, 56 S. E. 48, and substantially in *Parker* v. *Building & Loan Association*, 55 W. Va. 134; *Parkersburg Industrial Co.* v. *Schultz*, 43 W. Va. 470; *McDonald* v. *Cole*, 46 W. Va. 186; and *Bloyd* v. *Pollock*, ·27 W. Va. 75, 139. In *McDonald* v. *Cole*, following *Indus- ·trial Co.* v. *Shultz*, the language used is " which no evidence *fairly* presents;" and these two cases, following *Bloyd* v. *Pol- lock*, decided that it is error to give an instruction when the evidence on which it is based is not *appreciable*, or such as to *fairly* present the question, or when the evidence is so strongly against the hypothesis that the court would set aside the verdict based on the truth of such hypothesis. A later case, ·*State* v. *Clifford*, 59 W. Va. 1, Syl. 14, modifying the ex- pressions of the prior cases, says: " Whether there is any ·evidence of it is a question for the Court in giving or re- fusing instructions; whether there is sufficient evidence of it ·to sustain a verdict, is for the court on a motion for a new trial. " Section 9, chapter 131, Code, enlarges the pow- ·ers of this Court. It requires us, both upon the application for and the hearing of a writ of error or *supersedeas*, to ·consider the whole evidence, conflicting or otherwise, and if the verdict is against the clear and decided preponderance ·of the evidence, it may be and should be set aside. *John- ·son* v. *Burns*, 39 W. Va. 658; *State* v. *Zeigler*, 40 W. Va.

.593; *Yeager* v. *Bluefield*, 40 W. Va. 484; *Deering* v. *Coberly*, 44 W. Va. 606; *Laidley* v. *Kanawha*, 44 W. Va. 566. As we view this case, there was no evidence appreciably tending to prove the hypothesis of the instruction, and it was error to give it.

Was the error in giving instruction cause for reversal? If the plaintiff in error may have been prejudiced thereby, the authorities say yes. *State* v. *Douglass*, 28 W. Va. 303; *McKelvey* v. *Railway Co.*, 35 W. Va. 517; *Beard* v. *United States*, 158 U. S. 550. How can we say that an erroneous instruction, on one of the two material points relied on, the evidence being highly conflicting on the other, may not have prejudiced the defendant? As is said by Judge Poffenbarger in *Kuykendall* v. *Fisher*, *supra:* "Thus the evidence for the plaintiff does not tend to sustain his side of the issue in an appreciable degree, and therefore amounts in law to no evidence. In that state of the case, no instruction should have been given by the Court tending in any degree to impair the weight of the evidence for the defendant. The vice of the instruction not based on evidence in the case consists of its tendency to do that. In effect it tells the jury there is evidence when there is none." We therefore think the defendant company entitled to a new trial.

*Reversed. New Trial Granted.*