[EDITORS' NOTE: MAP IS ELECTRONICALLY NON-TRANSFERRABLE.] *Page 265 
The bill prayed for mandatory injunction against defendant C. W. Seiver requiring him to remove a triangular "tin shop" from a small triangular strip of land containing 728 square feet claimed by plaintiff as a part of Armstrong Street, a public street in the city. The answer denied that the strip of land was a part of the street, or that plaintiff had ever exercised any control thereover or possession thereof, and claimed title thereto in respondent. Upon final hearing after all the evidence was in, the court decided that the strip in controversy was a part of Armstrong Street, and decreed that respondent should remove his building therefrom; from which decree this appeal was granted.
A photostatic copy of a map filed by defendant's surveyor will visualize the controversy. The map may not be exactly correct, as there appears to be no fixed point for starting a survey of the town as laid out by the Davises about 1866, and is here inserted for the purpose of aiding a comprehension of the controversy. (See map.)
The land lying west of New Creek and contiguous thereto was owned in fee in 1865 by Henry G. Davis and his two brothers. Shortly after acquiring the land the Davises mapped a portion into lots and streets, and began conveying lots designated by numbers and with reference to named streets to various persons in the "Town of New Creek", the first deed of record being for lot 33 fronting on Centre Street on "map of said town" to Joseph Ritsell, dated June 16, 1866. In the same year, they conveyed lot No. 1, as designated on the map, to the Board of Supervisors of Mineral county, where the courthouse now stands. It does not appear that the map of the "Town of New Creek" as referred to in these deeds, was ever recorded. In 1874 the town of Keyser was incorporated and included the Davis land, and in 1913 the city of Keyser was incorporated including the same and other lands. Many lots, perhaps hundreds, were sold by the Davises up to 1880 reference in the deeds therefor being to map of "Town of New Creek" or "Town of Keyser." In 1880 a map of the Davis land laying it out into lots, streets *Page 266 
and alleys was admitted to record, and was thereafter referred to as the "Davis map of town or city of Keyser." The lots theretofore sold correspond in numbers and location with the lots designated on the recorded map. By this map it appears that Armstrong Street extended east past the courthouse to Water Street only. (Designated by Davis in a deed made in 1890 as New Creek Turnpike). However, it appears that after about the year 1870 a county road crossed New Creek where Armstrong Street if extended in a straight line would end at New Creek, and a public footbridge had been constructed for pedestrians over the creek which was later, in the year 1886, superseded by an iron bridge, shown on the map, 86 feet long and 16 feet wide. At the time the iron bridge was constructed the town council had obtained a right of way for an extension of Armstrong Street through the Arnold lands lying east of the creek, from the foot of Armstrong Street where the bridge began on the west side of the creek. The footbridge appears to have been across the creek with its west end located at and attached to a sycamore stump immediately below the present tin shop building and just inside the present wall along the creek under the rear of that building. The pedestrian using it approached it over the land now occupied by the tin shop as testified to by the old residents. The county road, known as the Knobley road, crossed the creek practically where the bridge now stands. The record does not show the exact place where this right of way for Knobley road was originally located at the creek crossing with reference to Armstrong Street or the town of Keyser. It is conceded that it must have been at least thirty feet wide, for the statute required that width at that time. Armstrong Street is one of the main streets of the city and the main street for ingress and egress from the county eastward to Reedsville and other points.
The proper location and width of Armstrong Street from Water Street eastward to the creek is the controlling issue. The city claims a dedication by definite location by two deeds made by Davis and his brothers who originally owned the strip of land lying between Water Street and New Creek, and acceptance of that dedication by corporate acts over the *Page 267 
land so dedicated. Defendant says that no such dedication was made; and he claims title thereto by virtue of a special warranty deed for the strip in controversy and another strip further down the stream, executed to him by a representative of the Davis estate in 1912. In 1890 Davis (and the other owners) conveyed to John W. Keys land lying between Water Street and New Creek described as "all that strip of land in the Town of Keyser lying between Armstrong Street and Patrick Street in one direction, and between the New Creek Turnpike (now commonly called Water Street) and New Creek in the other direction lying in the rear of the lots of said John W. Keys known as 'The Keys House Property' and separated from said Lots by said Turnpike and being of the same width as the said Keys Lots and extending the same width from said Turnpike or Water Street to the Creek." Subsequent deeds, including the one to the present owner, Huffman, contain practically the same description. The line on the map as the northern line of the disputed triangular strip marked S. 41° 48' E. 56.5 is conceded to be the southern boundary of the Keys deed, although plaintiff claims that this line should be about 2 1/2 or three feet further south. Ten years later, in 1900, Davis deeded to plaintiff, C. W. Seiver, a lot described as "all that certain strip of ground, situate in the Town of Keyser in Mineral County, West Virginia, between Water Street and New Creek, said strip of ground being particularly bounded and described as follows: Beginning at a point in the line of said Water Street, on the side next to New Creek, seventy-five feet below where the rear line of Walter Lowry's lots if extended would cross Water Street, thence by a straight line to New Creek, thence down said New Creek with the meanders thereof, to the Knobley road where it crosses New Creek by a bridge at the foot of Armstrong Street; thence with the line of said road, back to the line of Water Street; thence with said street to the beginning point, containing a fraction of an acre." The lines of this conveyance are not attempted to be shown on defendant's map, as shown by the photostatic copy above. Defendant' surveyor who made this map says that the southerly line of Knobley road is the dotted line shown on the *Page 268 
map running across the creek parallel with the bridge. He located this road, he says, from information given him by a Mr. Arnold. However, the exact location of this right of way for a road is very much in doubt. Many of the witnesses for defendant say that this road crossed the creek on the ground over which the bridge now stands. Senator Davis in his deed to Seiver in 1900, considered the southerly line of the road to be at the bridge where it crossed New Creek at the foot of Armstrong Street. His deed was made with reference to the actual location of Knobley road on the ground. The bridge had been constructed and used for about 14 years prior to this deed. The public had been using a portion, at least, of the land between the end of Armstrong Street as laid down on the Davis map recorded in 1880 and New Creek all that time, and some of the witnesses say that the space in controversy had been used as an approach to a public footbridge, the western end of which was anchored to a sycamore stump on the disputed strip, before the bridge was constructed. The approach to the bridge on the west end had been constructed also by a high fill which extended several feet over on the land in controversy. A portion had been actually appropriated to use by the town.
With these facts in existence, namely, the use of the land by the erection of the bridge and the approach thereto, and the former use by the public, Davis made the two deeds, one in 1890 and the other in 1900. In arriving at the intention of these deeds, all these facts and circumstances must be considered. The space between Armstrong Street as originally laid down on the Davis map recorded in 1880, and New Creek had been used as a public thoroughfare. Armstrong Street was about 39 feet wide at Water Street and perhaps wider at other points. In the Davis deed of 1900, he fixes one point of his conveyance at the Knobley road where it crosses the bridge at the foot of Armstrong Street. The space left between these two deeds both of which refer to Armstrong Street should be considered as having been dedicated for public use as a road, or as a city street; and therefore, the disputed land will lie in the road or street. We think the proper construction of these deeds in the light of the facts *Page 269 
and circumstances surrounding their execution impels the conclusion that Davis intended the space between them to be used by the public, and was a dedication. The surveyors and engineers testifying from their experience as such are not in accord as to the construction to be given the deeds. But none of them seem to have considered the facts and circumstances surrounding their execution, and reach their conclusions from the wording of the deeds as applied to the map of 1880. Engineers Knauff and Blundon say it was clearly the intent of the grantors in the deed of 1890 to sell a lot which fronts Armstrong Street extended, and that the same intent is expressed in the Seiver deed of 1900. While surveyor Martin and perhaps another surveyor, say that the Keys deed of 1890 only referred to Armstrong and Patrick Streets in a general way in order to fix the width of the ground conveyed to correspond with the rear of the Keys lot. The circuit court has construed these deeds as a dedication of the space left between them in accordance with the construction given by engineers Knauff and Blundon, and we affirm that construction in the light of the facts which existed at the times they were each executed. It will be perceived that defendant Seiver practically admits that he has encroached on the street in front of his S. T. Hardware building which extends over the right of way of Knobley road as set out by his surveyor by the dotted line, but denies encroachment on the other side of the street by his tin shop. He must admit a right of way for the public at least 30 feet wide. The location of that right of way is the crux of the case, and in order to save his tin shop strip, he must admit the southerly line of the right of way as overlapping the land deeded to him in 1900. It is claimed that Arnold fixes the location of Knobley road across the creek when he says that the bridge is on the northern line of the right of way. The location of that road could only be determined by its use as such for there is no written record of its location; and many of the witnesses say that the roadway is now covered by the bridge. Arnold does not attempt to mark it on the ground between Water Street and the creek. Davis made his deed, not to the indefinite right of way, but to the Knobley road where it crossed the creek *Page 270 
by a bridge at the foot of Armstrong Street. He acted upon the physical location of the road at that time and made his deed accordingly.
After the deed of 1890 had been made the city laid a 24-inch sewer, its main sewer from Mineral Street down Armstrong Street and which sewer passed through the land in controversy along about the foot of the fill made for the approach to the bridge thus exercising ownership over the land. The concreted space and the tin shop marked on the map are over that sewer. That sewer was laid in 1899 just a year or so before Davis made the deed to Seiver in 1900, conveying land down to the "Knobley Road where it crosses the creek by a bridge at the foot of Armstrong Street." It can be reasonably inferred that Davis knew these physical facts, and by leaving a space (practically the same width as Armstrong Street) between the lands deeded he intended to dedicate that space for the public purposes for which it was then being used. At that time, and now, there was no sidewalk on the approach to the bridge, and defendant concedes that a sidewalk when laid will take a part of the concreted space and the platform in front of the tin shop marked on the map. It further appears that the tin shop is erected over a part of the city's approach to the bridge, that is, over the slope of the embankment. The embankment runs out onto the disputed tract about 13 1/2 feet. It appears further that the city had used the disputed strip for storing street material and had authorized a telephone post and pipe line to be erected on, and constructed through it. There is conflict in the testimony about what the respective parties did with reference to the land, and the assessmnt and payment of taxes, but the circuit court has resolved that conflict in favor of plaintiff, and under the well established rule we are not disposed to disturb his finding in that regard. McBee v.Deusenberry, 99 W. Va. 176; Baughman v. Hoffman, 90 W. Va. 388;Ross v. McConnaughy, 85 W. Va. 199.
The intention to dedicate, however expressed, is the soul of every dedication and wherever this intention unequivocally appears, the dedication is complete on the part of the dedicator. Of course, there must be an acceptance by or on behalf *Page 271 
of the public. The law is quite tersely stated in 8 R. C. L., p. 889, sec. 13, as follows:
 "The mode of making dedications is immaterial. Neither a written grant nor any particular words or ceremonies, or form of conveyance, is necessary to render the act of dedicating land to public uses effectual. Anything which fully demonstrates the intention of the donor and the acceptance by the public, works the effect. Even words are unnecessary if the intent can be gathered from other sources. It is sufficient if the owner's intention and express act coincide; then dedication will be effective immediately on its acceptance by the public. Stated generally, therefore, the rule is that dedication may be made either with or without writing by any act of the owner, such as throwing open his land to public travel, or platting it and selling lots bounded by streets designated in the plat, thereby indicating a clear intention to dedicate, or by an acquiescence in the use of his land or his declared assent to such use, the dedication being proved in many cases by matter in pais and not by deed."
Our decisions are in accord with this terse statement. It would serve no useful purpose to review and analyze them.
There can be little question of the acceptance of the dedication on the part of the city by the use it has made over the disputed triangular strip and the acts of authority over it, and the use being made by the public at the time of the execution of the deeds. The land having been dedicated and accepted, the right of easement to the public was complete, and no subsequent act of the grantors' representatives could annul the easement. Nor can the possession of defendant under his claim of title defeat the easement. That he was permitted to retain possession for a long time is of little value to him, for the right of easement once firmly established for public use cannot be lost by the negligence or inaction of public officials. Ralston v. Town of Weston, 46 W. Va. 544; McClellan
v. Weston, 49 W. Va. 669; Jones v. Clarksburg, 84 W. Va. 257.
The decree is
Affirmed. *Page 272