# CHARLESTON.

MILLIGAN COAL COMPANY *v.* J. J. POLOWY *et als.*

(No. 6543)

Submitted January 15, 1930.   Decided January 21, 1930.

*Henry S. Cato* and *W. E. R. Byrne,* for appellant.
*Eakle & Eakle* and *Poffenbarger & Poffenbarger,* for appellees.

WOODS, JUDGE:

Sometime prior to 1921, The Hartland Colliery Company sold a tract of 400 acres of coal land to the Carver Fork Colliery Company, reserving a vendor's lien to secure the unpaid balance of $43,000.00, evidenced by two notes of $21,-500.00 each, the first falling due on the 6th day of October,. 1921.   The latter company after beginning operations sold the property under a contract of sale bearing date the 14th day of July, 1921, to one M. C. Jennings, who as a part of the consideration, assumed payment of the balance due Hartland Colliery Company.   Jennings immediately transferred

his interest therein to the Milligan Coal Company, which had been incorporated for the purpose of taking over the property. Polowy, a practical coal miner, who had been in charge of the property while in the hands of the Carver Fork Colliery Company, continued with the Milligan Coal Company in its operation of the property. The Milligan Coal Company issued $150,000.00 worth of stock, expecting to use the proceeds therefrom in taking care of the indebtedness against the property and in working the mine. It in fact paid nothing in cash or its equivalent for the mining property. A very small amount of the stock was sold, and on that sold not more than $3,000 or $4,000 was actually paid in. Polowy proceeded to ship coal under the name of ''Milligan Coal Company, J. J. Polowy.'' Although he shipped coal and incurred debts for the company in the name indicated, it seems that he deposited the proceeds in his own name. Thereupon, the Milligan Coal Company brought a suit in equity in November, 1922, against Polowy, seeking to enjoin him from keeping his accounts as he had done. An injunction was awarded by the court. The company then proceeded to discharge Polowy, and upon Polowy's refusal to vacate, a second injunction was secured in December, 1922. Upon a hearing the trial court dissolved the second injunction and allowed the first to remain in force, taking the view that the Carver Fork Colliery Company had the right to operate the mine under the conditions that existed as to the payments made and the terms of the contract under which the Milligan Coal Company procured its lease, thereby upholding the contention of Polowy that he was in fact operating the property for the Carver Fork Colliery Company. From this action in dissolving the second injunction the Milligan Coal Company appealed to this Court. 97 W. Va. 228.

On the former appeal this Court held that the Milligan Coal Company was entitled to possession under their contract; and that Polowy was in fact the agent of the Milligan Coal Company, thereby sustaining both temporary injunctions. The case was remanded for further proceedings. The circuit court upon receipt of the mandate of this Court, found that the $5,623.78, which remained in the hands of Elk Valley

Bank (same having accrued from the mining and sale of coal by Polowy), belonged to the Milligan Coal Company. Thereupon the Elk Valley Bank, The Carver Fork Colliery Company and Reedland Coal Company filed separate petitions setting up claims to this fund.

The Elk Valley Bank set up, among other things, a $2,500.00 note. This was taken in lieu of a $1,000.00 and a $1,500.00 note, formerly discounted by the bank (the payee in each instance), the latter of which having been executed while Polowy was conducting the operations under the ruling of the trial court pending the hearing and determination of the former appeal. The first note (signed by J. J. Polowy, as maker) was given for money to meet the current expenses of keeping the mine going, and the second (signed by Carver Fork Colliery Co., by J. J. Polowy, Treas.) to meet the pay roll. A note for $591.82, discounted at the bank to obtain money with which to pay the 1922 taxes on the mining property; a $2,000.00 claim assigned to the bank by James Reed; and an account of the Milligan Coal Company with F. D. Colebank, dated November 16, 1922, including merchandise, etc., furnished at the instance and request of Polowy, were also included in the petition.

The Carver Fork Colliery Company set up the aforesaid sums, reciting that they were borrowed by it or its agents for the benefit of the Milligan Coal Company; that by reason of such advances the fund now sought to be made liable was in fact raised; that the $2,000.00 item assigned to the bank by Reed was paid at its instance by Reed on the then overdue $21,500.00 note given by the Carver Fork Colliery Company to the Hartland Colliery Company (the payment of which had been assumed by Jennings in the contract of sale heretofore mentioned), in order to enjoy a further use of the Hartland Colliery Company's railroad in getting out the coal. This petition prays that the bank be permitted to deduct from the fund in its hands all of the debts made with it and assigned to it, as aforesaid.

The petition of the Reedland Coal Company simply recites that the company in 1923 purchased and took over from the Carver Fork Colliery Company all of its property and assets,

including choses in action, notes, etc., and sets up the accumulation of the fund, and ends with a prayer similar to that of the Carver Fork Colliery Company.

From the petitions, and the evidence introduced in support of them, it appears that each of the several sums set out therein was actually advanced in order to carry on the work of the mine, and that the same inured to the benefit of the Milligan Coal Company. No evidence was introduced on behalf of Milligan Coal Company. On the hearing the trial court decreed ''that the said bank do pay to the said Milligan Coal Company the residue of the sum of $5,623.78 remaining after deducting the said several sums of $2,500.00, $591.82, $2,000.00 and $180.60.''

The defense interposed by the plaintiff to the claim that the bank was entitled to charge the fund in its hands with the several amounts set out in the petition was that the same was barred by the former decision, under the rule of *res adjudicata*. A similar position is taken by plaintiff in this appeal. This defense is based on the theory that Polowy in his defense claimed to be rightfully acting as agent for the Carver Fork Colliery Company, and that an adjudication against an agent binds his principal. To this proposition the petitioners reply that Polowy was sued in his individual capacity, that the relief sought against him was on the theory of his agency for the Milligan Coal Company, and not the Carver Fork Colliery Company. We are unable to see wherein the defense of *res adjudicata* has any application to the present appeal.

The record discloses no claimant for the fund other than the Elk Valley Bank. This situation is a sufficient answer to the claim of the plaintiff here that there should be an accounting. The Milligan Coal Company has not asked for an accounting. There is no creditor asking for an accounting. In fact no creditors are shown, except the petitioners. Again, the plaintiff claims that by Polowy's evidence the latter was shown to have expended $18,677.00 while he operated the property. Admitting this to be true, the record does not disclose that it has been expended improperly. The Milligan Coal Company is placed in the anomalous position here of

both claiming and denying the benefit of Polowy's agency for them. It cannot consistently claim benefits thereunder and deny the liabilities. The case made clearly falls within two well settled principles of law, the first of which is that a principal cannot accept the benefit of his agent's contracts even though made in excess of the agent's authority, without assuming the burden of those contracts. By the ratification of the acts of his agent, in taking the benefit of what his agent has done, he subjects himself to the debts and charges made by the agent, in producing the benefit or result accepted by him. *Lowance* v. *Johnson,* 75 W. Va. 784; *Dewing* v. *Hutton,* 48 W. Va. 577; *Coal Company* v. *Lambert,* 107 Va. 368. The other is that any individual or corporation may bind himself by a contract made under a name other than his own. *Marmet Co.* v. *Archibald,* 37 W. Va. 778; *Singer Mfg. Co.* v. *Bennett,* 27 W. Va. 16.

It is urged that the insolvency of the Milligan Coal Company is sufficient to call for an accounting under the statute. This insolvency is, in effect, established from this record by the fact that it owes approximately $40,000.00 on the purchase price of the coal. Other than the money furnished by the petitioners, there only appears to have been something over $3,000.00 or $4,000.00 received from the sale of stock to finance the operation. Then so far as the record discloses there are no other creditors—at least none are complaining. Stripped to the bone, the controversy narrows itself to the claim of the bank and the plaintiff to the fund on deposit in the bank. No inequitable conduct attaches to the bank in any way. This fund as we have seen was accumulated by Polowy. It was made possible by the advancement of the several sums of money on which the bank seeks to impress a right. "A lien, based upon the fundamental maxims of equity, may be implied and declared by a court of chancery out of general considerations of right and justice as applied to the relations of the parties and the circumstances of their dealings." 17 R. C. L. 605. Proceeding upon the theory that the Milligan Coal Company is the owner of the fund, under the circumstances obtaining here (and the insolvency of the Milligan Coal Company and its vendors, Jennings and the Carver Fork

Coal Company), we are of opinion that the bank has an equitable lien thereon to the amount decreed it by the circuit court. *Williamson v. Jones,* 43 W. Va. 563, 591; *Ruffners v. Lewis' Exrs.,* 7 Leigh. 720.

The action of the circuit court in sustaining the demurrer to a bill, filed in October, 1923 (shortly after the rendition of this Court's decision on the former appeal), by the Reedland Coal Company against Milligan Coal Company, its stockholders and Carver Fork Colliery Company, praying specific performance of the contract of sale of July 14, 1921, and dismissing that bill, is also relied upon by the Milligan Coal Company as a former adjudication barring the relief sought by the petitioners in the present proceedings. A bill for specific performance is addressed to the sound discretion of the court. In the exercise of mere discretion of the court, it cannot be consistently said that the decree of dismissal is *res adjudicata* of the matters set up in the several petitions. We do not see any merit in this contention.

The decree of the circuit court is accordingly affirmed.

*Affirmed.*