REES ELECTRIC COMPANY, INC.

*v.*

MULLENS SMOKELESS COAL COMPANY

(No. 10724)

Submitted September 13, 1955. Decided November 1, 1955.

*Scherer, Bowers & File, L. L. Scherer,* for plaintiff in error.

*Anthony J. Sparacino, Roy A. Cunningham,* for defendant in error.

HAYMOND, JUDGE:

This action of assumpsit was instituted in the Circuit Court of Raleigh County in January, 1954. The plaintiff, Rees Electric Company, Inc., upon a declaration containing the common counts in assumpsit, seeks to recover from the defendant, Mullens Smokeless Coal Company, a corporation, the sum of $1,178.84, with interest, upon an account the items of which are set forth in a bill of particulars filed with the declaration. The defendant filed a special plea alleging that the causes of action mentioned in the declaration are based upon an attempt to charge the defendant upon a promise, not in writing, to answer for the debt of another, and its plea of the general issue.

Upon the foregoing pleadings the case was tried in March, 1954, at which time the jury was unable to agree upon a verdict and was discharged. Before the second trial, the defendant filed an additional special plea by which it tendered and offered to pay into court the sum of $126.04, the amount of one of the items of the account mentioned in the bill of particulars, and denied that it owed the plaintiff any other sum of money and denied liability for damages by reason of the nonpayment of the sum of $126.04.

At the conclusion of the evidence introduced by the plaintiff, the defendant moved the court to strike the evidence offered by the plaintiff and to direct the jury to return a verdict for the defendant. The court sustained the motion as to five items of the claim of the plaintiff specified in the bill of particulars, aggregating $513.13, and instructed the jury not to allow that amount, but overruled the motion as to the other items of the account and permitted those items to be considered by the jury. The jury returned a verdict in favor of the plaintiff for $703.01, which included all the items of the plaintiff's claim, with interest, except the five items aggregating $513.13. The court overruled the motion of the defendant to set aside the verdict as to all the items, except the item of $126.04, the amount tendered by the defendant, and to grant it a new trial, and by order entered July 20, 1954, rendered judgment upon the verdict for the amount found by the jury with interest and costs against the defendant. To that judgment this Court granted this writ of error upon the petition of the defendant.

For several years prior to 1951 the defendant owned about 500 acres of coal in Wyoming County and a plant and equipment which it operated in producing and marketing the coal. In 1951 it leased the coal and the plant to four persons who operated the mine under the name of Todd Smokeless Coal Company until the latter part of that year when they ceased their operation and surrendered the property to the defendant. By a written agreement dated February 11, 1952, but not executed and delivered until August 26, 1952, the defendant leased the property to J. R. Burke, J. S. Wood, C. G. Leedy and Hazel Meade Harris, a daughter of H. N. Meade, who is the president of the defendant Mullens Smokeless Coal Company. This lease was for a period of ten years at a royalty of fifty cents for each ton of coal mined and a royalty of twenty cents for each ton of coal purchased and shipped over the tracks or the tipple on the premises and provided that the lessees should have the right to

assign the lease to Harmco Smokeless Coal Company, a corporation, which they proposed to form, and did organize, under a corporate charter issued by the Secretary of State of this State on July 16, 1952. The lease also required the lessees to keep the machinery and the equipment on the premises, described in the lease, in good order and repair and to return them to the lessor in as good repair as they were at the time of the execution of the lease, except reasonable wear and tear. The lease was never recorded and it was not transferred by the lessees to the Harmco Smokeless Coal Company by any written assignment. The lessees never operated the mine as individuals but the Harmco Smokeless Coal Company took possession of the premises under the lease with the consent of the lessor and that company operated the mine for sometime prior to April 1, 1953, when, the operation being unsuccessful, the lease was surrendered and possession of the property was delivered to its owner the defendant which operated it after that date.

The four lessees were stockholders of the Harmco Smokeless Coal Company and three of them were its officers. Burke was president, Wood was secretary and treasurer, and Leedy was general manager. Hazel Meade Harris, the other stockholder, was absent from West Virginia during the operation of the mine by that company and she did not participate in its management or operation of the plant. By letter dated November 3, 1952, signed by Burke as president, F. E. Hill was employed as superintendent of the mine. His employment began on November 15, 1952, and he continued in that position until possession of the property was taken by the defendant on April 1, 1953, when he was employed by it and he continued in its temporary employment as repairman or mechanic until sometime in October of that year. H. N. Meade, the president of the defendant, did not know Hill and Hill did not know Meade until Hill was employed by Burke in November, 1952, though prior to that time the president of the defendant learned from Burke that Hill was or would be employed by the Harmco

Smokeless Coal Company. Meade was not a stockholder or an officer of Harmco Smokeless Coal Company, and though he visited the mine a few times while Harmco Smokeless Coal Company was in possession of the property and negotiated the sale of some coal for it, he did not direct or supervise or participate in the operation of the property during the existence of the lease.

While Hill was acting as the superintendent of the mine, which was located at Nuriva, Wyoming County, West Virginia, he communicated by telephone with Arthur Rees, President and Manager of the plaintiff Rees Electric Company, and requested Rees to perform some work on some of the equipment at the mine. Pursuant to and following this request the plaintiff performed labor and furnished material in repairing machinery and equipment at the mine between December 3 and December 12, 1952, for which four separate written invoices and delivery tickets were prepared and sent to Hill at the mine. These papers show that the services were rendered for and the material furnished to Mullens Smokeless Coal Company and the delivery ticket in each instance was signed by Hill.

The first of these four invoices was for labor performed on an armature on December 3, 1952, amounting to $33.10, the second was for labor performed and material furnished in connection with a field coil on December 3, 1952, amounting to $66.00, the third was for labor performed and material furnished on December 5, 1952, amounting to $428.48, and the fourth was for a magnet coil furnished on December 12, 1952, amounting to $12.09. The total charge for these services and materials was $539.67, and these items were specified in the bill of particulars.

At the time these services and materials were furnished Meade was in Florida and did not know anything about them until after December 12, 1952. He visited the mine, however, during the latter part of that month and discovered the four invoices made to Mullens Smokeless Coal Company on the desk in the office of the Harmco Smoke-

less Coal Company. When Meade learned of these four invoices he communicated with Rees by telephone and told him that the Mullens Smokeless Coal Company was not operating the mine and that the invoices should be made to the Harmco Smokeless Coal Company.

Subsequently the plaintiff performed labor or furnished material for the mine at the instance of Hill on December 29, 1952, January 9, 1953, January 23, 1953, and January 30, 1953. For these items five invoices and four delivery tickets were prepared. In each instance the invoice was made to the Harmco Smokeless Coal Company and the delivery ticket was signed by Hill. The invoice for the item furnished December 29, 1952, amounted to $24.90; one invoice for an item furnished January 9, 1953, amounted to $74.65 and another invoice for an item furnished on the same date amounted to $337.00; the invoice for the item furnished January 23, 1953, amounted to $10.58; and the invoice for the item furnished January 30, 1953, amounted to $66.00. The aggregate of these five invoices was $513.13, and, as to the items covered by them, the court instructed the jury that there could be no recovery by the plaintiff and the jury omitted the amount of $513.13 from the verdict.

On March 31, 1953, the plaintiff, at the instance of Hill, performed labor on some equipment used at the mine and prepared and sent to the mine an invoice made to the Harmco Smokeless Coal Company in the amount of $126.04. This invoice was returned to the plaintiff by someone at the mine with the notation that the invoice should be made to the Mullens Smokeless Coal Company which was done and the delivery ticket to that invoice was signed by Hill. On March 31, 1953, Meade and Rees were both at the mine and at that time Meade told Rees to make the invoice for the item of $126.04 to the Mullens Smokeless Coal Company and that it would pay the amount of the invoice.

After the Harmco Smokeless Coal Company surrendered possession of the leased premises and apparently be-

came insolvent the plaintiff made demand upon the defendant for the payment of the account in full which included all the invoices. The defendant refused to pay any part of the account including the amount of the invoice for $126.04 and it continued to refuse to pay that item until, at the second trial, it tendered the amount of $126.04 which the plaintiff refused to accept.

Arthur Rees, a witness in behalf of the plaintiff, testified that when Hill requested him to perform the services rendered by the plaintiff, Hill told him that he was the superintendent of the Mullens Smokeless Coal Company at the mine. He also testified that in December, 1952, after Meade had returned from Florida, Meade called him by telephone and told him that "there was no such thing as the Mullens Smokeless Coal Company. That was after the bill was up to five hundred and — five hundred and— oh, five hundred and some dollars, and he called me and told me there was no such company, that it was Harmco Smokeless Coal Company."; that Meade told him that he was not connected with Harmco Smokeless Coal Company and that "He told me to go along and help these boys out. I didn't know who they were. And he would see I didn't lose anything." This testimony concerning the acts of the plaintiff in furnishing the services ordered by Hill, while Rees believed him to be the superintendent of the Mullens Smokeless Coal Company, and his lack of knowledge that the property was leased or was operated by the Harmco Smokeless Coal Company until his telephone conversation with Meade subsequent to December 12, 1952, is the only evidence offered by the plaintiff to show that Hill at the time was the agent of the defendant Mullens Smokeless Coal Company and authorized to act in its behalf.

Hill, who testified in behalf of the defendant, admitted that he ordered the services from Rees but denied that he told him that he was the superintendent of the Mullens Smokeless Coal Company and stated that he informed Rees that he was working for "Harmco Smokeless." He

also testified that he was employed by Burke to work for the Harmco Smokeless Coal Company; that he was employed by that company while he was at the mine from November 15, 1952, to April 1, 1953; that on April 1, 1953, he was employed by the Mullens Smokeless Coal Company to do some repair work on the equipment at the mine and continued in that employment until sometime in October, 1953; that he never served as superintendent for the Mullens Smokeless Coal Company; that neither Meade nor anyone for that company authorized him to order the services performed by the plaintiff; that while he was employed as superintendent at the mine he was responsible only to Burke; and that he was employed in that position only by the Harmco Smokeless Coal Company.

Both Meade and Burke were offered as witnesses by the plaintiff and the defendant and each of them testified in behalf of both parties.

Meade testified that he had no connection whatsoever with the Harmco Smokeless Coal Company at any time prior to April, 1953; that neither he nor the Mullens Smokeless Coal Company employed anyone at the plant or on the premises during the period of the lease; that he was in Florida when the services were rendered by the plaintiff, at the request of Hill, between December 3, 1952, and December 12, 1952; that he did not know at that time that the services were being rendered and did not know anything about them until he saw the four invoices on the desk in the office of the Harmco Smokeless Coal Company when he visited the plant during the latter part of December, 1952; that the services had not been authorized by him; that when he discovered the invoices he called Rees by telephone and told him that the Mullens Smokeless Coal Company was not operating the mine and that the invoices should be made to the Harmco Smokeless Coal Company which had the work done. Rees admitted this telephone conversation; and the five invoices for the services rendered by the plain-

tiff between December 29, 1952, and January 30, 1953, were made to the Harmco Smokeless Coal Company. Meade denied that he told Rees in any conversation with him "to go along and help the boys out" and that he would see that Rees did not lose anything. Meade also testified that the only employment of Hill by him or the Mullens Smokeless Coal Company occurred on and after April 1, 1953, when Hill was employed to repair the equipment at the mine; that when the mine was leased the equipment at the mine was in good condition; that in its operation of the mine the Harmco Smokeless Coal Company caused it to be out of repair; that the Harmco Smokeless Coal Company did not place any improvements on the property; and that the equipment and the machinery when returned to the Mullens Smokeless Coal Company were replaced machinery and repaired equipment. His testimony on that point is not denied by any witness in behalf of the plaintiff.

Burke testified that the Harmco Smokeless Coal Company employed and paid all the workmen employed at the plant during the period of the lease; that the Mullens Smokeless Coal Company had nothing to do with the operation of the mine during that time; that he employed Hill for the Harmco Smokeless Coal Company; that as president of the Harmco Smokeless Coal Company he employed Hill as superintendent of that company at the mine by a letter to Hill dated November 3, 1952; that the employment was to be effective November 15, 1952; that Hill was placed in full charge of the mine; and that while he was so employed the Harmco Smokeless Coal Company paid him for his services in that position. The letter dated November 3, 1952, was introduced in evidence with the testimony of Burke and it shows the terms of the employment and the amount of compensation which Hill was to be paid.

From the undisputed testimony of Rees and Meade it appears that on or about February 18, 1952, Meade in behalf of the Mullens Smokeless Coal Company ordered

and purchased mine equipment consisting of a coil from the plaintiff Rees Electric Company the price of which was $16.50; that the article was delivered to the Beckley Hotel in Beckley at the request of Meade; that an invoice to cover it was made to the Mullens Smokeless Coal Company; that the amount of the invoice was paid by it to Rees Electric Company; that the purchase of this article was the first transaction of that kind between Meade or the Mullens Smokeless Coal Company and the Rees Electric Company; that prior to that time services of this character ordered by the Mullens Smokeless Coal Company had been furnished to it by the Beckley Machine and Electric Company which later became the National Mine Service; and that Rees had been employed by both these companies until 1951 when he ceased to be employed by either of them and organized Rees Electric Company, of which he was president.

The testimony of Rees that Hill told him, when he ordered the services performed by the plaintiff, that he was the superintendent of the defendant Mullens Smokeless Coal Company was a mere declaration of the alleged agent and was inadmissible against the defendant, the alleged principal, to prove the agency; and such a declaration, being hearsay, can be testified to only by the declarant. That testimony, which was introduced without objection, upon objection should have been excluded; but even though it was admitted without objection it is not sufficient of itself to show that Hill was the agent of the defendant and as such was authorized to act in its behalf in contracting with the plaintiff for the services rendered by it or to render the defendant liable to pay for them.

The well settled general rule is that admissions and declarations of a person claiming to be an agent of another person are not admissible against such other person to prove the agency. *Means* v. *Southeastern Gas Company*, 113 W. Va. 864, 169 S. E. 390; *Weimer* v. *Bourn*, 103 W. Va. 530, 138 S. E. 101; *Duty* v. *Williamson Hudson-Essex Sales Company*, 109 W. Va. 147, 153

S. E. 248; *State* v. *Tygart Valley Brewing Company*, 74 W. Va. 232, 81 S. E. 974; *Garber* v. *Blatchley*, 51 W. Va. 147, 41 S. E. 222; *Rosendorf* v. *Poling*, 48 W. Va. 621, 37 S. E. 555; *Poore* v. *Magruder*, 24 Gratt. 197; Mechem on Agency, 2d Ed., Volume 1, Section 285; 3 C. J. S., Agency, Section 322; 2 Am. Jur., Agency, Section 445; 80 A.L.R. Annotation, page 604. In 3 C.J.S., Agency, Section 322c(1), the text contains this language: "It is a well established general rule that the declarations, admissions, representations, or statements of an alleged, assumed, or reputed agent are not admissible in evidence to prove the fact of his agency as against the alleged principal, where the agency is denied by the alleged principal and is a material issue in the case, evidence is objected to, no other evidence of agency is offered or introduced, the declarations were made out of court to a third person in the absence of the alleged principal, they have not been brought to his knowledge nor ratified by him, and there are no facts estopping him to deny them. Such declarations may not be testified to by a witness other than declarant; they are hearsay and are not admissible even where they were made under oath in a prior suit or criminal prosecution or where declarant has since died."

The authority of an agent to perform the act in question must be proved. *Means* v. *Southeastern Gas Company*, 113 W. Va. 864, 169 S. E. 390; *Grafton and Greenbrier Railroad Company* v. *Davisson*, 45 W. Va. 12, 29 S. E. 1028, 72 Am. St. Rep. 799.

The positive testimony of Meade, of Burke who employed Hill, and of Hill himself is that Hill was not the agent of the defendant and had no authority from it to make a contract in its behalf for the services rendered by the plaintiff. The belief entertained by Rees that Hill was the agent of the defendant because Hill was employed at the mine owned by the defendant and told him he was its superintendent and his lack of knowledge of the lease, which was not recorded, and of the opera-

tion of the property by the Harmco Smokeless Coal Company when the plaintiff rendered the services covered by the invoices dated December 3, December 5, and December 12, 1952, made to the defendant, the amounts of which aggregate $513.13, can not impose liability upon the defendant for the unauthorized acts of Hill in contracting with the plaintiff for its performance of those services.

The general rule is that a person who deals with an agent is bound at his peril to know the authority of the agent. *Uniontown Grocery Company* v. *Dawson*, 68 W. Va. 332, 69 S. E. 845, Ann. Cas. 1912B, 148. "Where a person deals with an agent, it is his duty to ascertain the extent of the agency. He deals with him at his own risk. The law presumes him to know the extent of the agent's power; and, if the agent exceeds his authority, the contract will not bind the principal, but will bind the agent." Point 1, syllabus, *Rosendorf* v. *Poling*, 48 W. Va. 621, 37 S. E. 555. See point 2, syllabus, *Curry* v. *Hale*, 15 W. Va. 867; *Payne Realty Company* v. *Lindsey*, 91 W. Va. 127, 112 S. E. 306; *Cobb* v. *Glenn Boom and Lumber Company*, 57 W. Va. 49, 49 S. E. 1005, 110 Am. St. Rep. 734; *Crawford* v. *Whittaker*, 42 W. Va. 430, 26 S. E. 516; *Dyer* v. *Duffy*, 39 W. Va. 148, 19 S. E. 540, 24 L. R. A. 339.

The verdict of the jury in the amount of $703.01 is against the clear preponderance of the evidence which shows that the only amount the plaintiff is entitled to recover is the item of $126.04 which the defendant agreed to pay and which it tendered with its special plea. When a verdict of a jury is without sufficient evidence to support it or is plainly against the decided weight and preponderance of conflicting evidence, it will, on proper motion, be set aside by the court. Point 11, syllabus, *Toppins* v. *Oshel*, 141 W. Va. 152, 89 S. E. 2d 359; *Ward* v. *Smith*, 140 W. Va. 791, 86 S. E. 2d 539; *Kap-Tex* v. *Romans*, 136 W. Va. 489, 67 S. E. 2d 847; *Cannady* v. *Chestonia*, 106 W. Va. 254, 145 S. E. 390; *Palmer* v.

*Magers,* 85 W. Va. 415, 102 S. E. 100; *Griffith* v. *American Coal Company,* 78 W. Va. 34, 88 S. E. 595; *Kelley* v. *Aetna Insurance Company,* 75 W. Va. 637, 84 S. E. 502; *Sims* v. *Carpenter, Frazier and Company,* 68 W. Va. 223, 69 S. E. 794; *Coalmer* v. *Barrett,* 61 W. Va. 237, 56 S. E. 385; *Chapman* v. *Liverpool Salt and Coal Company,* 58 W. Va. 395, 50 S. E. 601.

The verdict is also defective in that the sum of $703.01 found by the jury is clearly in excess of the amount which under the evidence the plaintiff is entitled to recover. A verdict clearly in excess of the amount which the evidence shows the plaintiff is justly entitled to recover should be set aside by the trial court. *Toppins* v. *Oshel,* 141 W. Va. 152, 89 S. E. 2d 359; *Cato* v. *Silling,* 137 W. Va. 694, 73 S. E. 2d 731; *Drummond* v. *Cook Motor Lines,* 136 W. Va. 293, 67 S. E. 2d 337; *Thomason and Beggs* v. *Mosrie,* 134 W. Va. 634, 60 S. E. 2d 699; *Chesapeake and Ohio Railway Company* v. *Allen,* 113 W. Va. 691, 129 S. E. 610; *Welty* v. *Baer,* 107 W. Va. 266, 148 S. E. 193. As under the evidence the only proper verdict that could have been rendered by the jury was for the sum of $126.04, with proper interest, the judgment must be reversed and the verdict must be set aside.

The plaintiff contends that the action of Hill in obtaining the services performed by the plaintiff was ratified by the defendant and that by virtue of such ratification the defendant is liable to the plaintiff for the services which it performed. To support this contention the plaintiff cites a number of cases among which are *Seal* v. *Gwinn,* 115 W. Va. 103, 174 S. E. 685; *Milligan Coal Company* v. *Polowy,* 108 W. Va. 458, 151 S. E. 429; *Payne Realty Company* v. *Lindsey,* 91 W. Va. 127, 112 S. E. 306; *Flat Top National Bank* v. *Parsons,* 90 W. Va. 51, 110 S. E. 491; *Union Bank and Trust Company* v. *Long Pole Lumber Company,* 70 W. Va. 558, 74 S. E. 674, 41 L. R. A., N. S. 663; and *Truslow* v. *Parkersburg Bridge and Terminal Railroad Company,* 61 W. Va. 628,

57 S. E. 51. This contention is not well founded. It is not warranted by the evidence and it is not supported by the cited cases in all of which the principal did not repudiate the act of the agent but accepted the benefit which resulted from it. In *Uniontown Grocery Company* v. *Dawson*, 68 W. Va. 332, 69 S. E. 845, Ann. Cas. 1912B, 148, also cited by the plaintiff, the jury found from the evidence that the principal had not ratified the act of an unauthorized agent and this Court refused to disturb that finding upon writ of error.

In the case at bar the undisputed evidence is that Meade, as president and agent of the defendant, promptly repudiated the act of Hill in obtaining the services rendered by the plaintiff between December 3, 1952, and December 12, 1952, and informed Rees, the president and agent of the plaintiff, that Hill was not the agent of the defendant but that he was acting for the Harmco Smokeless Coal Company. The undisputed evidence also shows that after Rees was so informed by Meade, Rees made the invoices for the services rendered by the plaintiff between December 29, 1952, and January 30, 1953, to the Harmco Smokeless Coal Company which indicates clearly that Rees recognized the lack of authority in Hill to bind the defendant as its agent with respect to the services rendered by the plaintiff. The undisputed evidence further shows that the services performed by the plaintiff on the machinery and the equipment of the defendant at the mine amounted merely to repairs of the equipment which the Harmco Smokeless Coal Company, by operating the property under the lease, was required to make to keep or place the equipment in good condition.

There is no showing that the plaintiff furnished any new equipment which could be properly regarded as an improvement to the property of the defendant. The defendant could not, in repudiating Hill's authority to act as its agent, return to the plaintiff the labor furnished by it in repairing the equipment, and it does not appear

that any repair parts furnished by the plaintiff and placed or installed in the equipment owned by the defendant could be severed or removed and returned to the plaintiff. In order to avoid ratification of the unauthorized act of Hill, the defendant was not obliged to return to the plaintiff the repair parts furnished by it if to do so would render necessary the delivery by the defendant of any of its own equipment in its repaired condition as the transfer of such equipment would constitute an enrichment of the plaintiff to which it was not entitled. As the defendant, in repudiating Hill's act, could not return the labor performed and the repair parts furnished by the plaintiff, its retention of its own equipment after it had been repaired by the plaintiff and its resultant enjoyment of the relatively insignificant benefit which accrued from the services performed by the plaintiff did not amount to ratification of the contract covering those services between Hill and the plaintiff.

Though ratification by the principal of the unauthorized act of an agent may in some instances be effected contrary to the real intention of the principal, ratification by the principal of the act of the agent is ordinarily presumed to be based upon the intention of the parties. *Payne Realty Company* v. *Lindsey,* 91 W. Va. 127, 112 S. E. 306. Here the evidence does not indicate that Meade, as president and agent of the defendant, intended to ratify the unauthorized act of Hill in obtaining the services rendered by the plaintiff but on the contrary it clearly shows that instead of any intention to ratify such act he intended to repudiate it, did so promptly, and notified Rees, as president and agent of the plaintiff, to that effect.

In its brief filed in this Court the defendant contends that the circuit court erred in giving, over objection of the defendant, Instructions B and C offered by the plaintiff.

Instruction B told the jury in effect that if the jury believed from the evidence that Hill represented himself

to be the agent of the defendant and ordered the work which was performed by the plaintiff and that Meade as president of the defendant later learned that the work had been performed and did not repudiate Hill's act, the failure of Meade to repudiate it was evidence of its ratification.

Instruction C was also based on the theory of ratification and told the jury in effect that if the jury believed from the evidence that even though the defendant did not authorize Hill to have the work performed by the plaintiff if the defendant subsequently learned that the work had been so performed and did not repudiate Hill's act in requesting the performance of the work, the defendant, by its silence and acquiescence, ratified the transaction and rendered Hill's act binding upon it.

As there was no evidence of ratification by the defendant, neither instruction was based upon the evidence and each instruction should have been refused. This Court has repeatedly held in many cases that an instruction which is not based upon the evidence should be refused. *Higgs* v. *Watkins*, 138 W. Va. 844, 78 S. E. 2d 230; *Thrasher* v. *Amere Gas Utilities Company*, 138 W. Va. 166, 75 S. E. 2d 376; *Ballengee* v. *Whitlock*, 138 W. Va. 58, 74 S. E. 2d 780; *Cato* v. *Silling*, 137 W. Va. 694, 73 S. E. 2d 731; *Thomason and Beggs* v. *Mosrie*, 134 W. Va. 634, 60 S. E. 2d 699; *Chesapeake and Ohio Railway Company* v. *Johnson*, 134 W. Va. 619, 60 S. E. 2d 203; *Tennessee Gas Transmission Company* v. *Fox*, 134 W. Va. 106, 58 S. E. 2d 584; *Davis* v. *Pugh*, 133 W. Va. 569, 57 S. E. 2d 9; *Wright* v. *Valan*, 130 W. Va. 466, 43 S. E. 2d 364; *Jones* v. *Smithson*, 119 W. Va. 389, 193 S. E. 802; *Moore* v. *Oser*, 113 W. Va. 462, 168 S. E. 661; *Newsom* v. *Meade*, 102 W. Va. 489, 135 S. E. 604; *Penix* v. *Grafton*, 86 W. Va. 278, 103 S. E. 106; *Chadister* v. *Baltimore and Ohio Railroad Company*, 62 W. Va. 566, 59 S. E. 523; *Kuykendall* v. *Fisher*, 61 W. Va. 87, 56 S. E. 48.

The judgment of the Circuit Court of Raleigh County

is reversed, the verdict of the jury is set aside and this case is remanded to that court for a new trial which is hereby awarded the defendant.

> *Judgment reversed;*
> *verdict set aside;*
> *new trial awarded;*
> *case remanded.*