# CHARLESTON.

## UNIONTOWN GROCERY COMPANY *v.* DAWSON.

Submitted February 1, 1910.   Decided December 6, 1910.

1. PRINCIPAL AND AGENT—*Liability of Third Person Dealing with Agent.*

    The general rule is that one dealing with an agent is bound at his peril to know the agent's authority. If in writing, he is presumed to have read his warrant of authority.

2. SAME—*Creation of Relation.*

    To create the relationship of principal and agent (broker) there must be a contract of employment, express or implied; and in order to obtain rights himself, or establish liabilities to others, against his principal, the fact of his appointment must be made to appear, by an instrument in writing, by spoken words, or it may be implied from the conduct of the parties, and the nature and circumstances of the particular acts done by the principal.

3. SAME.

    If a written instrument (letters in this case) be relied on, in order that it may be held to create agency, it must also on its face, or when read in the light of surrounding circumstances, appear that such was the intention.

4. SAME—*Existence of Relation—Intent of Principal—Ratification.*

    Where there is no agency in fact, but an intermeddler or stranger, one not in privity with the principal, by authority duly given, has assumed to act as agent, and the question is whether such unauthorized act has been ratified, it becomes one of intention on the part of the assumed principal, a fact for jury determination.

5. SAME—*Ratification of Unauthorized Act of Stranger.*

    Ratification of an unauthorized act of a stranger may not be

implied as a conclusion of law from the silence of the party affected by the act, but such silence is a circumstance to go to the jury, with others, from which the jury may imply ratification.

Error to Circuit Court, Morgan County.

Action by the Uniontown Grocery Company against W. E. Dawson. Judgment for defendant, and plaintiff brings error.

*Affirmed.*

*Faulkner, Walker & Woods,* for plaintiff in error.

*Forrest W. Brown,* for defendant in error.

Miller, Judge:

In the court below the verdict was for defendant, and the judgment overruling plaintiff's motion to set aside the verdict and award it a new trial, was that it take nothing by its action, and that defendant recover his costs. To test the correctness of this judgment plaintiff brings the case here on a writ of error.

Plaintiff, a corporation, at Uniontown, Pennsylvania, claiming to have purchased from defendant, a packer at Berkeley Springs, this state, through the agency of one Shearman, a broker at Indianapolis, Indiana, a carload of canned tomatoes, and to be the assignee of similar contracts of other purchasers, through the same agency, of certain other carloads of that class of goods, brought this action against defendant to recover damages for alleged breaches of said contracts.

The only point of error relied on, or saved on the record, is the action of the court denying the plaintiff's motion to set aside the verdict of the jury and award it a new trial.

The controlling question is, had Shearman, the broker, authority; was he the duly authorized agent of Dawson to execute contracts of sale? The position of plaintiff's counsel is, that as the evidence is practically all documentary, letters and correspondence between Dawson and Shearman, not conflicting, but conclusive, or so preponderating in favor of plaintiff's claim, the questions involved are questions of law for the court rather than for jury determination. It is conceded that Dawson never had any direct dealings either with plaintiff or either of the other parties with whom Shearman made contracts in regard to the tomatoes.

The primal question is did Dawson and Shearman sustain to each other the relationship of principal and agent, at the time of the transactions involved? The propositions of plaintiff's counsel are, first, that this agency is established by the letter of Dawson to Shearman of May 18, 1905, and his postal card to Shearman of July 5, 1905; and second, that, if not so established, Dawson's letter to Shearman of August, 1905, and his silence after being notified by numerous letters of Shearman of his sales to plaintiff and others, amounted to a ratification of such acts of agency, binding him, and entitling plaintiff to damages for the alleged breach of said contracts.

The general, and salutary rule is, that where one deals with an agent he is bound at his peril to know his authority. If in writing he is presumed to have read his warrant of authority. *Wells* v. *Life Ins. Co.,* 41 W. Va. 131; *Cobb* v. *Glenn Boom & Lumber Co.,* 57 W. Va. 49; *Rosendorf* v. *Poling,* 48 W. Va. 621. And the principal is not, as a general rule, bound by the contracts of one who assumes without authority to represent him as agent. 31 Cyc. 1567; *Rosendorf* v. *Poling, supra.*

To create the relationship of principal and broker there must be a contract of employment, express or implied. 19 Cyc. 190; 2 Clark & Skyles, Law of Agency, section 749. Like other agents the broker "derives his authority from the appointment of his principal, and in order to obtain rights himself, or establish liabilities to others, against his principal, the fact of his appointment, must be made to appear", though no special method is requisite, and as in case of other agents the appointment may be made to appear by an instrument in writing, or by mere spoken words, or it may be presumed from the conduct of the parties. Mechem on Agency, section 937. Story on Agency, (8th Ed.) section 94, says: "Implied authority may be deduced from the nature and circumstances of the particular act done by the principal. If the principal sends his commodity to a place where it is the ordinary business of the person, to whom it is confided, to sell, it will be intended, that the commodity is sent thither for the purpose of sale."

Such actual authority as Shearman must be referred to the letters relied on by plaintiff. In the first, that of May 18, Dawson wrote Shearman "I have several cars of 3 lb. tomatoes to offer. I want to sell at once. I am getting ready for the

coming season & want to clean them out. What can you do in that line at this time? Let me hear at once." It could not well be said, and it is not seriously contended, that this letter was authority to Shearman to sell, even if we consider that Dawson knew, as there is some evidence tending to show, that Shearman was a broker. This letter, at most was but information to Shearman that Dawson had tomatoes "to offer", and that he wanted to sell, and to sell at once. But he only invites a proposition. He says "Let me hear at once." Shearman evidently so interpreted this letter, for in his reply, May 22d, he asks for samples, and says: "Upon receipt of the samples we will endeavor to submit an offer to you that will move the lot." Dawson never responded to Shearman's letter. He never sent the samples requested, and Shearman never submitted an offer, though he subsequently wrote Dawson urging him to send the samples, and saying he was holding a customer for the goods. But getting no reply, Shearman practically dropped the matter, until without reference to any previous correspondence, Dawson wrote Shearman the postal card of July 5th, 1905, relied upon, as follows: "Dear Sir: I have about 5 cars of 3 lb. tomatoes that I want 65cts for, cash, F. o. b. If you are in the market write me here." Certainly it cannot be said that this communication was authority of Dawson to sell, though it does state the quantity of goods, and the price and terms of payment. But it does not authorize Shearman to sell. It is a mere inquiry, or request of the writer, if Shearman is in the market, to write him. Assuming on authority, on receipt of this postal card, Shearman professes to have proceeded, and to have sold all the goods in carload lots, one of which he claims to have sold to the plaintiff, and he so advised Dawson in a number of letters, written him and giving him shipping directions. But to none of these letters did Dawson reply, until August 7th, 1905, as follows: "Dear Sir: I have received several letters from you but as I did not have the goods labeled I have been waiting on them. Have not got them yet, so will be unable to ship goods & will not ship any goods without B. of L. attached to sight draft." It is claimed that as Dawson in this letter gave as his only excuse for not forwarding the goods the fact that they were not labeled, and imposed as a further condition of shipping them, a bill of lading attached to sight draft, it

. amounted to a ratification of Shearman's acts in selling, binding Dawson, if the purchasers acceded to the additional condition of bill of lading attached to sight draft. It does appear that Shearman subsequently obtained the consent of the purchasers, or some of them, to this condition and notified Dawson, but Dawson made no response to these letters, until August 22, 1905, when he wrote Shearman as follows: "Dear Sir: I have written you my terms, I have had considerable experience in shipping canned goods & have lost a good deal of money, so the only way I ship sight draft to bill lading, not subject to examination. I wrote you that I had tomatoes to sell at 65c cash, but you went to selling before you had asked for terms, so I hope this will be satisfactory." After receiving this letter Shearman went ahead, and professes to have obtained the consent of his customers that the goods might be shipped, not subject to examination, and he so advised Dawson by subsequent letters; but the latter paid no attention to them, until October 23, 1905, when he wrote Shearman as follows: "Dear Sirs: I am surprised that you continue writing me in regard to tomatoes that I never authorized you or any one else to sell. I simply wrote you had written me repeatedly that I had so many tomatoes at a certain price, I was not ready to sell and thought no more about the matter until you sent me orders for goods you had sold without any contract whatever & without samples. I also wrote you that goods were not labeled & that I did not ship goods subject to examination. Plainly indicating that I did not want to sell & did not intend to. I have sold a number of cars through brokers but have never sold without samples & contract. You have not only done me an injustice but the people you have sold to as well."

In support of his propositions, and based on this evidence, and on the theory of actual agency, and ratification of previous authorized acts of the agent, plaintiff's counsel have filed a very able and elaborate brief.

As already intimated we unhesitatingly say that in our opinion the evidence does not establish agency. Story on Agency, already cited, does not justify such conclusion. A written instrument, as the letters relied on here, in order that it may be held to create an agency, must clearly show on its face, or when read in the light of surrounding circumstances, that such was the

intention. This is true also of spoken words, when relied upon as creating an agency. 1 Clark & Skyles, Law of Agency, section 44.

We think that the first proposition of actual agency, by the letters referred to, is not seriously relied upon. The chief contention is, that there was ratification, by silence, and by the subsequent letters of the defendant. As we have said the brief of counsel, on this latter proposition, goes upon the theory of ratification of unauthorized acts of agency. If we could say that this evidence establishes the relationship of principal and agent, which we cannot do, the brief, based on that theory would be very persuasive, if not convincing. *Thompson* v. *Manufacturing Co.,* 60 W. Va. 43, *Dewing* v. *Hutton,* 48 W. Va. 577, and so far as we can see all the other authorities cited by counsel are predicated upon the theory of agency in fact, and ratification of unauthorized acts of agency, in the manner indicated. The relationship of principal and agent not being established, therefore, the argument, and the authorities cited, will not support the propositions of counsel, and certainly they do not support the proposition that the evidence, not being conflicting, presents a question of law for the court, rather than one of fact for the jury.

When there is no agency, but an intermeddler or stranger, one not in privity with the principal by authority duly given, has assumed to act as agent, and the question is whether such unauthorized acts has been ratified, it becomes one of intention on the part of the assumed principal, a fact for jury determination. "Ratification of an unauthorized act of a stranger", says 1 Clark & Skyles, Law of Agency, page 348, "may not be implied as a conclusion of law from the silence of the party affected by the act, but it does not follow that it is incompetent to be submitted to the jury; and it may, as a circumstance, with others, be submitted to the jury as facts from which they may imply such ratification." And quoting from the Massachusetts court, this writer says in the same connection: "It is a rule in the law of agency, that when the unauthorized act of an agent is done in the execution of a power conferred, in a mode not sanctioned by its terms, and in excess or misuse of the authority given, ratification by the principal is more readily implied from slight acts of confirmation. The duty to disaffirm

at once, on knowledge of the act, is said to be more imperative in such cases, because the confidence of the principal in the fitness and fidelity of the person he has selected as an agent is shown by the relations already established between them." Quoting from Livermore on Agency, the same writers, at page 346, say: "When the person doing the business is a mere volunteer, who has officiously interfered in the affairs of another person, and has effected an insurance or made a purchase for him, I do not conceive that the other person is bound to answer a letter from the intermeddler informing him of the contracts so made in his name, nor that his silence can be construed into a ratification." And quoting from Chief Justice Tindal, in *Wilson* v. *Tumman,* 6 M. & G. 242, at page 349, the same writers say: "That the effect of a ratification was dependent on the question whether the person assuming to act had acted for another and not for himself. * * * If, then, the principle of law be that I can ratify that only which is done in my name, but when I have ratified whatever is done in my name I am bound for it, as by the act of an authorized agent, it is apparent that my silence, in view of what has been done, is to be regarded simply as evidence of ratification, more or less expressive, according to the circumstances in which it occurs. It is not ratification of itself, but only evidence of it, to go to the jury along with all the circumstances that stand in immediate connection with it." Mechem on Agency, section 160, states the law substantially the same way. He there quotes from decisions in Illinois, that "where a stranger, in the name of another, does an unauthorized act, the latter need take no notice of it, although informed of the act thus done in his name, and he shall only be bound by an *affirmative ratification*", "and this view" says this writer "is supported by eminent judges and text writers", citing in the note, Evans, Livermore and Duer on Agency. This author in the same connection, however, says, that the contrary view, that is the view that affirmative ratification is required, is also maintained by judges of great ability, referring especially to the opinion of Woodward, Judge, in *Philadelphia Co.* v. *Cowell,* (Pa.) 70 Am. Dec. 128. It is said in the opinion quoted, that "it must be admitted that the acts of a mere stranger or volunteer is capable of ratification, for all the authorities are so; but the argument is that the silence

of the party to be affected, whatever the attending circumstances, cannot amount to ratification of the act of a stranger.  *  *  * If then the principle of law be that I can ratify that only which is done in my name, but when I have ratified whatever is done in my name, I am bound for it, as by the act of an authorized agent, it is apparent that my silence in view of what has been done, is to be regarded simply as evidence of ratification more or less expressive, according to the circumstances in which it occurs.  It is not ratification of itself, but only evidence of it, to go to the jury along with all the circumstances that stand in immediate connection with it.  Among these the prior relations of the parties are very important."

These authorities clearly demonstrate that his silence and the letters of Dawson written prior and subsequent to the sales by Shearman, were all proper matters to go in evidence to the jury on the question of his intent to ratify the unauthorized acts of Shearman.  But they do not present a question of law for the court, and they do not present such a case of preponderance of evidence in favor of plaintiff as to justify us in saying that the court erred in denying the plaintiff a new trial.  For these reasons the judgment below must be affirmed.

*Affirmed.*