**FILED**

**May 30, 2018**

**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 17-0096 – *AMFM LLC v. Shanklin*

WORKMAN, C. J., dissenting:

I dissent to the majority's nonsensical conclusion that a third party may enforce a contract entered into by a person who indisputably had neither actual nor apparent authority to do so. This position violates every tenet of contract and agency law and further distorts a salutary statutory provision which is patently inapplicable. Petitioner's argument—contained in a mere *singular* paragraph in its original brief and completely devoid of any authority in support—is that a provision contained in the Uniform Durable Power of Attorney Act, designed to encourage acceptance of facially valid powers of attorney and immunize those who act in good faith reliance thereon, somehow creates legal capacity to make a binding contract where none otherwise exists. The majority whole-heartedly accepts this nonsensical premise, despite the absence of a *single* case in which this uniform provision has been utilized in a similar fashion. Nevertheless, the majority boldly concludes that the statute somehow granted respondent authority that she did not otherwise have, thereby conflating the immunizing effect of this statute with the contractual requirement of assent by a competent party.

With respect to this limited issue, the pertinent facts are undisputed. While she was still competent, Lena Nelson executed a power of attorney naming her son, Stephen Nelson, as her attorney in fact. The power of attorney stated that "if, *for any reason*, STEPHEN NELSON, *cannot or will not* serve as such, then I do hereby make,

1

constitute, and appoint my daughter, KIMBERLY SHANKLIN . . . my true and lawful attorney for me." (emphasis added). Ms. Nelson was thereafter admitted to petitioner's facility; upon her admission, her daughter, Ms. Shanklin—the *successor* power of attorney—executed admission papers and an arbitration agreement. It is undisputed, based upon the discovery conducted on this issue, that petitioner's facility had the power of attorney document in its possession at the time of admission which plainly designated an entirely different individual—Mr. Nelson—as power of attorney. It is further undisputed that petitioner provided no evidence that it undertook any efforts to determine whether Mr. Nelson, "could not" or "would not" serve as power of attorney before respondent executed the admission and arbitration documents. Moreover, Ms. Shanklin testified in deposition that there was, in fact, absolutely no reason why Mr. Nelson could not or would not serve as power of attorney.

This Court has held generally that "[a]s a written understanding between parties to resolve future disputes through arbitration, the validity of an arbitration agreement is determined in the same manner that the validity of other written agreements is determined—through the application of well-established contract principles." *State ex rel. AMFM, LLC v. King*, 230 W. Va. 471, 477, 740 S.E.2d 66, 72 (2013). Further, "to be valid, the subject Arbitration Agreement must have (1) competent parties; (2) legal subject matter; (3) valuable consideration; *and* (4) mutual assent. Absent any one of these elements, the Arbitration Agreement is invalid." *Id*. at 478, 740 S.E.2d at 73 (emphasis in original). The key factor in this case is obviously whether a "competent party" entered into

2

the subject arbitration agreement. "To be a competent party, the persons or entities signing the Arbitration Agreement *must have had the authority to do so*." *Id*. (emphasis added). The analysis, then, requires nothing more than an examination of basic principles of agency.

Agency is created through actual or apparent authority: "A principal is bound by acts of an agent if those acts are either within the authority the principal has actually given his agent, or within the apparent authority that the principal has knowingly permitted the agent to assume." *Thompson v. Stuckey*, 171 W. Va. 483, 487, 300 S.E.2d 295, 299 (1983). Petitioner ardently insists that Ms. Shanklin had "actual" authority to enter into the arbitration agreement because Mr. Nelson was not present at admission and therefore "unable" to serve.[1] This argument is nonsense. The majority declines this obviously untenable argument in favor of a much bolder proposition—that Mr. Nelson had somehow "declined to serve" simply because the record contains no evidence that he ever utilized his authority, thereby giving Ms. Shanklin actual authority as the successor.

The problem with either of these illogical attempts to divest Mr. Nelson of his authority as power of attorney is obvious. Either position would allow any successor power of attorney to surreptitiously perform unauthorized acts and then claim that his or

---

[1] Petitioner states "[i]t is clear from the very fact that Stephen Nelson was not present during his mother's admission that he 'could not' or was unable or unwilling to act as his mother's DPOA on that day[.]" Mr. Nelson lives in Charleston. Ms. Nelson was admitted to petitioner's facility in Boone County where respondent's sister, Regina, works.

her successor status was activated by the unwitting attorney-in-fact's mere absence or lack of notice and opportunity to act. There is no evidence whatsoever that Mr. Nelson was aware of and elected not to serve on any prior occasion when Ms. Shanklin exercised her non-existent authority. Nor does simply having not yet had occasion to exercise one's authority under a power of attorney equate to a declination to serve. A successor agent quite simply has no authority to act unless and until the conditions precedent to his or her succession occur. *See Estate of Alford v. Shelton,* 89 N.E.3d 391, 401 (Ill. 2017) (finding successor agent without the "duties and liability" described in the power of attorney act where agent was "merely [the] successor agent and was not yet [the] 'agent' as defined in the Act.").[2] The majority opinion stands for the shockingly unsustainable conclusion that blatantly wielding and utilizing non-existent authority somehow creates actual authority in hindsight.

In absence of actual authority—which is unquestionable in this case—petitioner must establish that Ms. Shanklin had apparent authority. However, "ostensible" or "apparent" agency did not exist in this instance because its creation required some act by the *principal* (Ms. Nelson) to create the appearance of agency in Ms. Shanklin:

> Agency by representation or estoppel, sometimes designated as "apparent agency," involves a case in which there may be no agency in fact, but where *the principal* or employer *holds*

---

[2] *Compare Kennedy v. Robinson Mem. Hosp.*, 72 N.E.3d 70, 72 (Ohio Ct. App. 2016) (finding arbitration agreement executed by successor power of attorney valid where power of attorney included language expressly providing that "[a]ny person can rely on a statement by a successor Agent that he or she is properly acting under this document . . . . That person does not have to make any further investigation or inquiry.").

*out or represents a person to be his agent* or employee, and a third party or parties rely thereon, in which case the person making the representation is estopped to deny the agency.

*Burless v. West Virginia University Hospitals, Inc.*, 215 W.Va. 765, 772, 601 S.E.2d 85, 92 (2004) (quoting Syl. Pt. 8, *Brewer v. Appalachian Constructors, Inc.*, 138 W.Va. 437, 76 S.E.2d 916 (1953)) (emphasis added).  There is no allegation that Ms. Nelson took any action or was even competent to take any action to create ostensible agency in Ms. Shanklin.  Accordingly, it is evident that Ms. Shanklin had neither actual nor apparent authority to enter into the arbitration agreement.[3]  The absence of a competent party's

---

[3] The straight-forward analysis ignored by the majority and easily followed by other courts is well-stated in *Robbins ex rel. Robbins v. Beverly Enterprises, Inc.*, No. 3:07CV047-B-A, 2008 WL 907465, at *2 (N.D. Miss. Mar. 31, 2008):

> To bind her husband to the arbitration agreement at issue, Virginia Robbins was required to have authority to act as Dedric Robbins' agent, and to succeed on their motion to compel arbitration, the defendants must show that Mrs. Robbins did, in fact, have that authority. The three potential grounds for finding agency authority are the existence of actual authority (either express or implied), apparent authority, or statutory authority.
>
> The defendants have set forth no documentation or evidence of any kind showing that Dedric Robbins gave express authority to Virginia Robbins to act as his agent. "[W]ithout express authority to act as an agent, there can be no implied authority." Thus, Virginia Robbins did not have actual authority to bind Dedric Robbins to the arbitration agreement.
>
> Next, the court examines whether Mrs. Robbins had apparent authority to bind Mr. Robbins to the arbitration agreement. For a determination of apparent authority, "[t]here must be a showing of (1) acts or conduct by the principal

5

execution of the arbitration agreement is therefore fatal to its enforcement without further analysis.

In the face of this fatal lack of authority, the majority unsuccessfully reaches for a lone provision contained in the Uniform Durable Power of Attorney Act, West Virginia Code § 39B-1-119(c), which states that

> [a] person who in good faith accepts an acknowledged power of attorney without actual knowledge that the power of attorney is void, invalid or terminated, that the purported agent's authority is void, invalid or terminated, or that the agent is exceeding or improperly exercising the agent's authority may rely upon the power of attorney as if the power of attorney were genuine, valid and still in effect, the agent's authority were genuine, valid and still in effect, and the agent had not exceeded and had properly exercised the authority . . .

Based on this statute, petitioner argues that "when Ms. Shanklin presented the durable power of attorney at the time of admission, [petitioner] had no duty to question her authority to act as successor agent [and] without *actual knowledge* that the durable power

---

> indicating the agent's authority, (2) reasonable reliance upon those acts by a third party, [and] (3) a detrimental change in position by the third party as a result of that reliance." Though it was incumbent upon the defendants to make certain that Virginia Robbins had authority to act as her husband's agent and bind him to the arbitration agreement, the defendants have alleged no acts or conduct on the part of Dedric Robbins indicating that he so authorized her. "In Mississippi, 'one who relies on the acts of an agent to bind his principal has the burden of proving the authority of the agent.'"

(citations omitted).

6

of attorney is in some way defective, [petitioner] can act in good faith on the representations made by Ms. Shanklin when she admitted her mother to the facility." (emphasis in original). The majority goes a step further, declaring that this uniform statutory provision itself bestowed authority on Ms. Shanklin to enter into the arbitration agreement. The majority cites no caselaw whatsoever—despite an overwhelming majority of states having a similar statutory provision—supporting its use of this statute to create binding and enforceable authority where none exists.

Both the petitioner and the majority's respective premises are fatally flawed. First, it is clear there was nothing "defective" about the power of attorney—Ms. Shanklin simply had no authority to act pursuant to it. Secondly, petitioner's undisputed possession of the power of attorney document which on its face demonstrated that Ms. Shanklin was not the power of attorney is unquestionably sufficient to create actual knowledge that she had no authority to act. *See Hutcheson v. Eskaton Fountainwood Lodge*, 225 Cal. Rptr. 3d 829, 843 (Cal. Ct. App.), *reh'g denied* (Cal. Ct. App. 2017) (finding "personal care" power of attorney "did not have authority to execute the health care agreement, including the arbitration clause, because ["health care" power of attorney's] authority was known to [third party]"); *Coffill v. Coffill*, 656 F.3d 93, 96 (1st Cir. 2011) (rejecting defense of good faith reliance where document was "of no effect on its face, being limited by an expiration date long past before its purported exercise . . . and thus apparently worthless"); *see also* Syl., *Uniontown Grocery Co. v. Dawson*, 68 W. Va. 332, 69 S.E. 845 (1910) ("The general

7

rule is that one dealing with an agent is bound at his peril to know the agent's authority. If in writing, he is presumed to have read his warrant of authority.").

More importantly, however, the majority's application of West Virginia Code § 39B-1-119 is a complete distortion of the statute's intended operation. This statute allows a third party, in good faith, to "rely on" on a power of attorney in absence of "actual knowledge" that the individual's authority is "void, invalid or terminated." W. Va. Code § 39B-1-119(c). Its purpose, therefore, is not to create authority where none exists. Rather, this provision is plainly intended to protect third parties from liability when they *act* in *reliance* on the power of attorney which they have no actual knowledge regarding its invalidity. This interpretation and operation of the statute is unequivocally verified by the very drafters of the Act. As the Prefatory Note and Comments to the Uniform Durable Power of Attorney Act explains, "[s]ections 119 and 120 of the Act address the problem of persons refusing to accept an agent's authority. Section 119 provides *protection from liability* for persons that in good faith accept an acknowledged power of attorney." Uniform Power of Attorney Act, National Conference of Commissioners on Uniform State Laws, 2006 (emphasis added). In this regard, it provides a shield of immunity for those relying on facially valid, but ultimately defective, powers of attorney, rather than a sword to create otherwise non-existent authority.

Further, the very language of the statute suggests the scope of its operation is limited to powers of attorney which *on their face* appear to grant authority. West

8

Virginia Code § 39B-1-119(c) plainly presupposes that the third party has in its possession an "*acknowledged* power of attorney" purporting to give the *named* attorney-in-fact authority—thus is the significance of it having been acknowledged. (emphasis added). "The purpose of [the acknowledgment requirement] is to protect a person that in good faith accepts an acknowledged power of attorney without knowledge that it contains a forged signature or a latent defect in the acknowledgment." Uniform Power of Attorney Act, *supra*. In this instance, the acknowledged power of attorney was both facially and substantively valid—it simply gave no authority to Ms. Shanklin in absence of the precondition that her brother was unable or refused to act. Documents which on their face fail to create agency have long been held invalid by this Court. Syl., *Uniontown Grocery*, 68 W. Va. 332, 69 S.E. 845 ("If a written instrument . . . be relied on, in order that it may be held to create agency, it must also on its face, or when read in the light of surrounding circumstances, appear that such was the intention."). West Virginia Code § 39B-1-119 has no effect whatsoever on this well-established tenet of agency law.

At base, the majority's opinion holds that West Virginia Code § 39B-1-119, allows a third party to enforce a contract entered into with an individual who had no authority, but merely represented themselves as having such authority, all while in possession of information which flatly contradicts this representation.[4] This premise

---

[4] Notably, petitioner fails to make any sort of estoppel argument, *i.e.* Ms. Shanklin cannot, with knowledge that she lacked authority to enter the agreement, avoid the effects of the agreement. Given its abject failure to pursue such an argument, it is beyond the

simply has no basis in law. As explained in *Pagarigan v. Libby Care Ctr., Inc*., 120 Cal.

Rptr. 2d 892, 894-95 (Cal. Ct. App. 2002):

> A person cannot become the agent of another merely by representing herself as such. To be an agent she must actually be so employed by the principal or "the *principal* intentionally, or by want of ordinary care, [has caused] a third person to believe another to be his agent who is not really employed by him." Defendants produced no evidence Ms. Pagarigan had ever employed either of her daughters as her agent in any capacity. Nor did defendants produce any evidence this comatose and mentally incompetent woman did anything which caused them to believe either of her daughters was authorized to act as her agent in any capacity.

(emphasis in original). In fact, were the statute's intent to allow third parties to merely rely

on the word of a purported agent without even so much as the necessity of reading the

document granting such authority, there would be no need for subsection (d). Critically,

subsection (d) provides that a person who is asked to accept an acknowledged power of

attorney may "request, and rely upon, without further investigation . . . [a]n agent's

certification under penalty of perjury of any factual matter concerning the principal, agent

o power of attorney[.]" W. Va. Code § 39B-1-119(d). Accordingly, were subsection (c)

to have the effect urged by petitioner—that a third party may blindly rely upon a shallow

---

purview of this Court to speculate about the viability of such an argument: "Courts cannot concoct or resurrect arguments neither made nor advanced by the parties." Syl. Pt. 13, in part, *W. Va. Reg'l Jail & Corr. Facility Auth. v. A. B.*, 234 W. Va. 492, 766 S.E.2d 751, 757 (2014).

representation of authority—there would be no need to empower the third party to request additional certification of any "factual matter" from the purported agent.

It is clear from petitioner's cursory brief and nonsensical arguments that it lacks even minimal conviction that its arguments are availing.[5] In spite of this, the majority endorses petitioner's specious reasoning and without a scintilla of support, summarily declares that respondent's unauthorized acts served to divest Mr. Nelson of his authority. The majority's opinion runs counter to the most fundamental principles of contract and agency law and badly misapplies the immunity provision of the Uniform Durable Power of Attorney Act. Accordingly, for the reasons set forth hereinabove, I respectfully dissent.

---

[5] In its Reply brief, petitioner unsuccessfully attempts to expound on its original premise by detailing at length all of the occasions on which Ms. Shanklin acted as Ms. Nelson's power of attorney before and after her nursing home admission including writing checks on Ms. Nelson's behalf, arranging for medical care, and signing hospital admission papers. There is, of course, no evidence that petitioner was aware of or relied on those prior acts, nor does petitioner argue as much. Rather, petitioner appears to suggest that since Ms. Shanklin had previously and subsequently acted as power of attorney (despite having no written authority to do so) this created "actual authority" to do so. For reasons that the majority does not articulate, it likewise finds this wholly irrelevant unauthorized activity to be compelling evidence of Ms. Shanklin's actual authority.